2018 PA Super 194

| | | |
|---|---|---|
| DANA J. MCCONAGHY, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| THE BANK OF NEW YORK AS TRUSTEE | : | |
| FOR THE CERTIFICATE HOLDERS | : | |
| CWALT, INC., ALTERNATIVE LOAN | : | |
| TRUST 2006-45T1, MORTGAGE PASS- | : | |
| THROUGH CERTIFICATES, SERIES | : | |
| 2006-45T1 AND MERS ACTING SOLELY | : | |
| AS A NOMINEE FOR AMERICA'S | : | |
| WHOLESALE LENDER, | : | |
| | : | |
| Appellants | : | No. 1247 WDA 2017 |

Appeal from the Judgment Entered September 20, 2017
in the Court of Common Pleas of Washington County
Civil Division at No(s): C-63-CV-2012-7599

BEFORE:    BENDER, P.J.E, SHOGAN, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.:                    FILED JUNE 29, 2018

The Bank of New York, and its predecessors and successors in interest (collectively, BNY), appeal from the September 20, 2017 judgment in favor of Dana McConaghy and against BNY in this quiet title action. Specifically, BNY challenges the trial court's order, which granted relief in favor of McConaghy and against BNY on its counterclaims for equitable relief.[1] We

---

[1] BNY appealed from the August 3, 2017 order denying its post-trial motion. An appeal does not properly lie from an order denying post-trial motions, but rather upon judgment entered following disposition of the post-trial motions. See Mackall v. Fleegle, 801 A.2d 577, 580 (Pa. Super. 2002). Upon order from this Court, BNY praeciped the trial court prothonotary to enter
(Footnote Continued Next Page)

*Retired Senior Judge assigned to the Superior Court.

affirm in part, vacate in part, and remand for proceedings consistent with this opinion.

We glean the following factual history from the record. In 1998, McConaghy and her husband, Matthew McConaghy (Decedent), purchased a home on Doubletree Drive, Venetia, Washington County, with the aid of a $230,000 loan secured by a mortgage from Relocation Financial Services (Relocation loan/mortgage). Both McConaghy and Decedent signed the deed for the home and the documents to obtain the Relocation loan/mortgage.

In February 2004, McConaghy and Decedent obtained a loan secured by a mortgage from First Franklin Financial Corporation (First Franklin loan/mortgage) for $342,250, in order to pay off the Relocation loan/mortgage. Both McConaghy and Decedent signed the documents to obtain the First Franklin loan/mortgage.

In 2006, McConaghy and Decedent separated. McConaghy moved out of the home and filed a complaint for divorce, which was never finalized. Decedent continued to live in the home while it was listed for sale. At that time, only the First Franklin mortgage encumbered the home.

(Footnote Continued) ——————————
judgment on the order of the trial court. Accordingly, we treat this case as if timely filed from the September 20, 2017 entry of judgment. Pa.R.A.P. 905(a).

In August 2006, Decedent alone obtained a $175,000 loan from First Commonwealth Bank (First Commonwealth loan). In October 2006, Decedent alone obtained a $200,000 loan secured by a mortgage from IndyMac Bank (IndyMac mortgage) to pay off the First Commonwealth loan. Following this transaction, the first lien on the home was still the First Franklin mortgage, and the purported second lien was the IndyMac mortgage. However, as noted above, McConaghy did not participate in the acquisition of the First Commonwealth loan or the IndyMac mortgage. She signed no mortgage documents.

In November 2006, Decedent alone obtained a $543,600 loan secured by a mortgage and a $101,925 loan secured by a mortgage from Countrywide Home Loans (Countrywide loans/mortgages).[2] Again, McConaghy did not participate in the acquisition of the Countrywide loans/mortgages. The $543,600 loan and a portion of the $101,925 loan were used to pay off the remaining balance on the First Franklin loan ($336,020.65) and the remaining balance on the IndyMac loan ($201,702.95). Following these transactions, the Countrywide mortgages purported to take the positions of the First Franklin and IndyMac mortgages as the first and second liens on the home.

---

[2] By a series of assignments, BNY ultimately became the holder of the Countrywide mortgages.

In January 2007, the company that conducted the settlement for the Countrywide mortgages contacted McConaghy and requested that she re-sign a document for which Decedent had provided a copy during closing. Upon viewing the document, McConaghy learned that Decedent had, by among other things, forged McConaghy's signature, and produced an altered document that purported to transfer McConaghy's interest in the home to Decedent.

In January 2008, Decedent was indicted on criminal charges related to the Countrywide mortgages. Decedent committed suicide in April 2008, making McConaghy the sole remaining owner of the former tenant by the entirety property, which remained encumbered by the Countrywide mortgages. McConaghy contests the validity of the mortgages and has not made any mortgage payments. As a result, McConaghy has received numerous collection letters and foreclosure notices since 2008.

On November 19, 2012, McConaghy filed an action to quiet title, asserting that the Countrywide mortgages were procured by fraud and were unenforceable because Decedent "did not have the permission or legal right to unilaterally encumber the [p]roperty with a [m]ortgage." Complaint in Action to Quiet Title, 11/19/2012, ¶¶ 30, 31. BNY filed an answer with new matter and counterclaims. In its counterclaims, BNY sought relief based on unjust enrichment for satisfying the First Franklin mortgage, and for paying the insurance and taxes on the home since November 2006.

On July 16, 2015, BNY filed a motion for partial summary judgment asserting the existence of an equitable lien on the property created by BNY's satisfaction of the First Franklin mortgage. The trial court denied BNY's motion, and the case proceeded to a nonjury trial on March 24, 2017. On May 19, 2017, the trial court granted McConaghy relief in her quiet title action, holding that the Countrywide mortgages were void, invalid, and unenforceable, and denied BNY's counterclaims for equitable relief because the trial court found that BNY had unclean hands.

BNY filed a motion for post-trial relief,[3] which was denied by the trial court on August 3, 2017. This timely-filed appeal followed.[4] BNY presents the following issues for our consideration.[5]

---

[3] Post-trial motions must be filed within ten days after the filing of a nonjury trial verdict. Pa.R.C.P. 227.1(c). The tenth day fell on a holiday, making the deadline May 30, 2017. See Pa.R.C.P. 106(b). BNY filed its post-trial motion on June 1, 2017. Nonetheless, because the motion was filed while the trial court still had jurisdiction over the matter, McConaghy did not object to the timeliness of the motion, and the trial court decided the motion on the merits, we are permitted to ignore the untimeliness of the post-trial motion. See Ferguson v. Morton, 84 A.3d 715, 718 n.4 (Pa. Super. 2013) ("[W]hen untimely post-trial motions are filed within the thirty-day period that the trial court retains jurisdiction over the case, and when the trial court decides those issues without objection by an opposing party, we will treat the subsequent appeal as though the post-trial motions were timely filed for purposes of issue preservation.").

[4] The trial court did not order BNY to file a Pa.R.A.P. 1925(b) statement, and did not file a Pa.R.A.P. 1925(a) opinion. "Ordinarily, the remedy for non-compliance with [] Pa.R.A.P. 1925(a) is a remand to the trial court with directions that an opinion be prepared and returned to the appellate court." Commonwealth v. Hood, 872 A.2d 175, 178 (Pa. Super. 2005) (citation
(Footnote Continued Next Page)

1. Whether the trial court erred as a matter of law and/or abused its discretion when it held that [BNY] had failed to establish equitable claims for unjust enrichment, equitable subrogation, and equitable lien.

2. Whether the trial court erred as a matter of law and/or abused its discretion when it held that [BNY was] not entitled to equitable remedies because [Countrywide] allegedly had engaged in fraudulent conduct, [was] grossly negligent, and had unclean hands.

3. Whether the trial court's findings that [BNY] allegedly had engaged in fraudulent conduct, w[as] grossly negligent, and had unclean hands were against the weight of the evidence at trial.

BNY's Brief at 5 (unnecessary capitalization and trial court answers omitted).

We review these issues mindful of the following.

Our review in a non-jury case such as this is limited to a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.

(Footnote Continued) ───────────────

omitted). However, after review of the record, we conclude that the trial court's memoranda from May 19, 2017, and August 3, 2017, adequately apprise us of the trial court's reasoning in relation to the issues raised herein. Thus, we need not remand for the filing of a 1925(a) opinion and we will proceed to review the merits of BNY's claims. See id.

[5] There is no question that the trial court did not err in granting McConaghy's complaint to quiet title. Because she never signed the Countrywide mortgage documents, they were, as the trial court put it, "void, invalid, and unenforceable." Trial Court Opinion, 5/19/2017, at 8, 9.

* * *

> Conclusions of law, however, are not binding on an appellate court, whose duty it is to determine whether there was a proper application of law to fact by the lower court. With regard to such matters, our scope of review is plenary as it is with any review of questions of law.

Shaffer v. O'Toole, 964 A.2d 420, 422-23 (Pa. Super. 2009) (internal quotation marks and citations omitted).

BNY asserts that unless it is granted equitable relief, McConaghy will be unjustly enriched at BNY's expense. BNY claims it was entitled to be equitably subrogated to the rights of First Franklin and thus be awarded an equitable lien on the Doubletree property. The trial court denied equitable relief because it held that Countrywide, BNY's assignor, had unclean hands in this transaction. We agree with BNY, in part.

Because the issues of unjust enrichment, equitable subrogation, equitable lien, and unclean hands are all interrelated, we address them together.

Prior to the Countrywide mortgages, the Doubletree property was purportedly encumbered by two mortgages, one from First Franklin and the second from IndyMac. Like the later Countrywide mortgages, the IndyMac mortgage was fraudulently obtained by Decedent and thus did not bind McConaghy. However, the First Franklin mortgage was signed by both Decedent and McConaghy, and was binding on her.

When Countrywide granted its mortgages in November, 2006, as part of the deal, it paid off the prior mortgages so it would have a first lien. McConaghy was not bound by the fraudulent IndyMac mortgage, and thus derived no benefit from Countrywide's satisfying that mortgage. However, McConaghy was bound by the First Franklin mortgage and thus, when Countrywide satisfied that mortgage, it removed a $336,000 obligation from McConaghy. Clearly, she was enriched, and it would be unjust for her to retain this windfall.

As this Court stated in Gutteridge v. J3 Energy Grp., Inc., 165 A.3d 908 (Pa. Super. 2017) (en banc),

[t]he elements of unjust enrichment are benefits conferred on [one party] by [the other party], appreciation of such benefits by [one party], and acceptance and retention of such benefits under such circumstances that it would be inequitable for [one party] to retain the benefit without payment of value. Whether the doctrine applies depends on the unique factual circumstances of each case. In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the [one party] has been unjustly enriched.

To sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for her to retain.

Id. at 917 (citations and quotation marks omitted).

The instant case is quite similar to our recent decision in Infante v. Bank of America, N.A., 130 A.3d 773 (Pa. Super. 2015). In that case, Infante's husband purchased a home, with the aid of a loan, secured by a

2004 mortgage, before they were married. Following their marriage, Infante's husband transferred title of the property to himself and Infante as tenants by the entirety. Thus, Infante was subject to the 2004 mortgage. In 2008, Infante's husband, acting alone, obtained a loan, secured by a mortgage from Countrywide, and used it to pay off the 2004 loan/mortgage. The 2008 mortgage was later assigned to Bank of America (BOA). Infante did not sign the 2008 mortgage. Following her husband's death, Infante learned of the 2008 mortgage and sought a declaratory judgment that the mortgage's lien against the property was invalid. BOA counterclaimed seeking reformation of the mortgage and equitable subrogation and an equitable lien. Following a nonjury trial, the trial court denied reformation but granted BOA's request for equitable subrogation and an equitable lien. On appeal, this Court agreed, finding that BOA had a valid claim for equitable subrogation and an equitable lien because, inter alia, Infante "would be unjustly enriched if she were permitted to retain the property without bearing responsibility for the amount of the 2004 mortgage." Id. at 780.

The parallels are obvious. As Infante was subject to the 2004 mortgage, so was McConaghy bound by the First Franklin mortgage. As BOA paid off the 2004 mortgage, so too did Countrywide pay off the First Franklin mortgage. As BOA was equitably subrogated to the rights of the 2004

mortgagee, and granted an equitable lien, so too is BNY entitled to the same equitable relief.

Because BNY is seeking equitable relief, it is subject to doctrines that apply to equity. One of these is unclean hands. "The doctrine of unclean hands requires that one seeking equity act fairly and without fraud or deceit as to the controversy in issue." Terraciano v. Com., Dep't of Transp., Bureau of Driver Licensing, 753 A.2d 233, 237–38 (Pa. 2000) (citations omitted).

The trial court denied equitable subrogation and an equitable lien because it held that Countrywide acted fraudulently in this matter. That was error. Clearly, Decedent's actions were fraudulent. However, as a matter of law, while Countrywide's actions may have been negligent, possibly grossly negligent, they were not fraudulent. Countrywide was suckered by Decedent, as was McConaghy. See Shapiro v. Shapiro, 204 A.2d 266, 268 (Pa. 1964) ("Application of the unclean hands doctrine is confined to willful misconduct which concerns the particular matter in litigation.").

As a subset of its main argument, BNY also claims that the trial court erred in denying BNY equitable remedies for paying the real estate taxes and insurance on the home since November 2006. Appellant's Brief at 36. We have acknowledged, supra, that but for the Countrywide mortgages satisfying McConaghy's obligation to First Franklin, McConaghy would have been solely responsible, upon Decedent's death, for mortgage payments to

First Franklin. However, McConaghy does not live in the home and has derived little benefit from BNY's insurance and tax payments. Thus, we find that the trial court did not abuse its discretion in denying BNY's equitable counterclaims for reimbursement.

Accordingly, we affirm the denial of reimbursement for payment of real estate taxes and insurance. We vacate the trial court's holding that the unclean hands doctrine bars relief to BNY to remedy McConaghy's unjust enrichment. We grant an equitable lien to BNY in an amount to be determined on remand.[6]

Judgment affirmed in part and vacated in part. Case remanded for the entry of an order consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/17

---

[6] In its Opinion and Order dated May 18, 2017, the trial court referenced the very substantial counsel fees McConaghy sustained. It is not clear whether this factored into the decision to deny an equitable lien to BNY. On remand, the trial court should determine if the amount claimed by BNY of $336,020.65 should be reduced by some or all of the counsel fees claimed.