J-A16042-19

2019 PA Super 235

SETH NAZARAK                              :    IN THE SUPERIOR COURT OF
                                          :          PENNSYLVANIA
                                          :
            v.                            :
                                          :
                                          :
RUBIN WAITE, JR. AND HARANIN              :
CONSTRUCTION, INC.                        :
                                          :    No. 1888 MDA 2018
            Appellants                    :

Appeal from the Judgment Entered December 10, 2018
In the Court of Common Pleas of Centre County Civil Division at No(s):
2016-2400

BEFORE:   LAZARUS, J., MURRAY, J., and STEVENS*, P.J.E.

OPINION BY STEVENS, P.J.E.:                    **FILED AUGUST 02, 2019**

      Rubin Waite, Jr., ("Waite") and Haranin Construction, Inc., ("Haranin

Construction") (collectively "Appellants") appeal from the judgment entered

on December 10, 2018,[1] in the Court of Common Pleas of Centre County in

favor of Seth Nazarak ("Nazarak").  After a careful review, we affirm.

_____

[1] We note Appellants filed their notice of appeal from the October 15, 2018,
order of the trial court denying their post-trial motions.  Although an appeal
"does not properly lie from an order denying post-trial motions, but rather
upon judgment entered following disposition of post-trial motions[,]" this
Court will treat an appeal as timely filed if judgment is later entered on the
docket.  ***McConaghy v. Bank of New York for Certificate Holders CWALT,
Inc., Alternative Loan Tr. 2006-45T1, Mortg. Pass-Through
Certificates, Series 2006-45T1***, 192 A.3d 1171, 1173 n.1 (Pa.Super.
2018).  Here, upon order of this Court, Appellants praeciped the trial court to
enter judgment, on December 10, 2018.  Accordingly, we consider the appeal
to have been timely filed after the entry of judgment.  ***See*** Pa.R.A.P.
905(a)(5).  The caption has been amended accordingly.

_____

*   Former Justice specially assigned to the Superior Court.

The relevant facts and procedural history are as follows: On June 26, 2016, Nazarak filed a complaint against Appellants, and in response to Appellants' preliminary objections, Nazarak filed an amended complaint on July 25, 2016.[2] Therein, Nazarak contended that, on or about December 10, 2014, Waite was driving a commercial vehicle owned by his employer, Haranin Construction, and Nazarak was driving a commercial vehicle owned by his employer, M & C Trucking Company. Both men were acting within the course and scope of their employment when the vehicle being driven by Waite rear-ended the vehicle being driven by Nazarak, who was stopped at a red traffic signal at the intersection of Route 22 and Cook Street in Cambria County.

Nazarak contended that, as a direct and proximate result of the accident, he sustained serious injury. Accordingly, he presented claims of negligence against Waite, vicarious liability against Haranin Construction, and negligent entrustment against Haranin Construction. On September 15, 2016, Appellants filed an answer with new matter to Nazarak's amended complaint, and on October 5, 2016, Nazarak filed a reply to the new matter.

On September 14, 2017, Appellants filed a motion to compel an independent medical examination, and on October 17, 2017, the parties agreed upon a consent order for Nazarak to submit to an independent medical examination with Appellants' expert, J. William Bookwalter, III, M.D.

_____

[2] The trial court subsequently denied Appellants' preliminary objections as moot.

On June 4, 2018, Appellants filed several motions *in limine*. Relevantly, Appellants filed motions *in limine* seeking to limit Nazarak's medical damages evidence solely to the amount paid by workers' compensation and the Department of Public Welfare, preclude evidence of compromise and release and limit Nazarak's wage loss to the amount of indemnity benefits paid by workers' compensation, and preclude Charles J. Harvey, D.O., from testifying based on opinions and reports authored by a non-testifying expert. Nazarak filed a reply in opposition to Appellants' motions *in limine*, and the trial court denied the motions *in limine* indicated *supra*.

Thereafter, both parties filed proposed jury instructions, and Appellants additionally filed supplemental proposed jury instructions. The case proceeded to a jury trial, at the conclusion of which the jury answered "yes" to the question: "Was the negligence of Rubin Waite, Jr. and Haranin Construction, Inc. a factual cause of any harm to Seth Nazarak?" Jury Verdict Sheet, filed 6/21/18. Further, the jury answered "$750,000" to the question: "State the amount of damages, if any, sustained by Seth Nazarak as a result of the accident." ***Id.***

Appellants filed timely post-trial motions, to which Nazarak filed a reply in opposition. By opinion and order entered on October 15, 2018, the trial court denied Appellants' post-trial motions. Appellants filed a notice of appeal on November 13, 2018. On that same date, the trial court directed Appellants to file a Pa.R.A.P. 1925(b) statement, Appellants timely complied, and the trial

court filed a brief statement referring this Court to its October 15, 2018, opinion. Thereafter, as indicated *supra*, judgment was entered against Appellants and in favor of Nazarak.

On appeal, Appellants present the following issues for our review (verbatim):

**A. WHETHER THE COURT MADE EVIDENTIARY ERRORS REQUIRING A NEW TRIAL IN PERMITTING EVIDENCE OF PLAINTIFF'S WORKERS' COMPENSATION LIEN AT TRIAL?**

1. Whether the trial court erred in permitting evidence of Plaintiff's workers' compensation lien at trial as it is an inadmissible collateral source, permitted a double recovery and usurped the function of the jury by valuing the case and prejudicing the Defendants?

2. Whether a new trial should be awarded as the trial court erred in permitting evidence of Plaintiff's workers' compensation compromise and release at trial as evidence of settlements are inadmissible at trial and its introduction valued the case for the jury prejudicing the Defendants?

3. Whether a new trial should be awarded as the trial court erred in refusing to issue Defendants' supplemental jury points for charge 1 and 3 to provide the jury with a full understanding of Plaintiff's duty to repay the workers' compensation lien misleading the jury and prejudicing the Defendants?

**B. WHETHER THE COURT MADE EVIDENTIARY ERRORS REQUIRING A NEW TRIAL BASED UPON EXPERT TESTIMONY PERMITTED AND EXCLUDED AT TRIAL?**

4. Whether a new trial should be awarded as Plaintiff's vocational expert Celia Evans testified outside the scope of her expert report prejudicing the Defendants?

- 4 -

5. Whether a new trial should be awarded as the expert report and opinions of non-testifying expert Dr. Brooks were permitted to be introduced at trial prejudicing the Defendants?

6. Whether a new trial should be awarded for precluding the testimony of Plaintiff's expert Dr. Rundorff that Plaintiff's lumbar spine could have been in the same condition prior to the at-issue accident prejudicing the Defendants?

**C. WHETHER THE COURT MADE EVIDENTIARY ERRORS REQUIRING A NEW TRIAL BY PERMITTING IMPROPER REFERENCES AT TRIAL?**

7. Whether a new trial should be awarded based upon Plaintiff's counsel's improper reference in his closing argument to the fact that the Defendants did not produce a vocational or economic expert as their figures if presented would have been large prejudicing the Defendants?

8. Whether a new trial should be awarded based upon Plaintiff's counsel's solicitation of testimony regarding the brake failure of the at-issue truck from Defendant Waite after Defendants had already admitted negligence prejudicing the Defendants?

Appellants' Brief at 11-12 (suggested answers omitted) (bold in original).

In issue "A," Appellants present three sub-issues related to evidence regarding Nazarak's receipt of workers' compensation benefits. Specifically, they contend the trial court erred in permitting evidence that Nazarak received workers' compensation benefits, permitting evidence of Nazarak's compromise and release with regard to his workers' compensation claim, and failing to give Appellants' supplemental points for charge numbers 1 and 3.

With regard to their first sub-issue, Appellants contend the trial court erred in admitting evidence that Nazarak received workers' compensation

benefits, which Nazarak would have to repay in the event of a recovery in the instant case.[3] *Id.* at 31. Specifically, Appellants assert the evidence regarding the existence of the workers' compensation lien violated the "collateral source rule." *Id.* at 33. They further assert the evidence of the workers' compensation lien confused and misled the jury into believing that, since such benefits were paid to Nazarak, his injuries "must have been caused by the at-issue accident[,]" thus usurping the function of the jury. *Id.* at 35. Finally, they suggest the evidence of the workers' compensation lien permitted a "double recovery" by Nazarak. *Id.* at 38.

"[T]he admission or exclusion of evidence is within the sound discretion of the trial court. In reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law." *Schmidt v. Boardman Co.*, 958 A.2d 498, 516 (Pa.Super. 2008) (citation omitted).

> An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality,

---

[3] In this vein, Appellants contend the trial court erred in admitting into evidence the Liberty Mutual Workers' Compensation medical and indemnity payment ledgers indicating a workers' compensation lien against Nazarak; Nazarak's testimony he received workers' compensation benefits, which he would have to repay in the event of a recovery in the instant case; and testimony from a Liberty Mutual representative, Linda Wiest, that Liberty Mutual would expect Nazarak to repay the workers' compensation lien in the event Nazarak recovered in the instant matter.

prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. In addition, to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Jacobs v. Chatwani*, 922 A.2d 950, 960 (Pa.Super. 2007).

In addressing Appellants' first sub-issue, the trial court relevantly indicated the following:

> The collateral source rule provides that payments from a collateral source shall not diminish the damages recoverable; the rule was intended to avoid precluding a party from obtaining redress for injuries merely because coverage was provided by a collateral source. *Nigra v. Walsh*, 797 A.2d 353, 356 [(Pa.Super. 2002)]. A plaintiff is prevented from introducing evidence about the lack of workers' compensation during trial due to the possibility of creating sympathy. *Hileman v. Pittsburgh and Lake Erie R. Co.*, 546 Pa. 433, 685 A.2d 994, 999 (1996). Specifically, "it has never appeared necessary to negate any assumption that there is workers' compensation (or subrogation for that matter) in actions by employees against third parties for injuries that occur on the job." *Id.*
>
> Workers' compensation gives employers the right of subrogation when the employer made payments as a result of negligence by a third party. *Liberty Mutual Ins. Co. v. Domtar Paper Co.*, 77 A.3d 1282, 1289 [(Pa.Super. 2013)]. The purpose of subrogation is to prevent double recovery for the same injury, [] relieve employers of liability for third party's negligence, and prevent negligent parties from escaping liability. *Young v. W.C.A.B. (LGB Mechanical)*, 976 A.2d 627, 630 (Pa.Commw. 2009).
>
> The evidence that was presented was not presented to preclude Plaintiff [Nazarak] from recovering; Plaintiff [Nazarak] will not receive double pay. Workers' compensation is not a collateral source because the lien must be paid back, as the stated purpose of allowing subrogation of claims by the employer is to prevent workers' compensation from being a collateral source. Additionally, the jury was not influenced by the introduction of the testimony, as the existence of a workers' compensation lien does not imply causation in this case, particularly since [Appellants] admitted liability and the issue was damages.

Trial Court Opinion, filed 10/15/18, at 2-3 (citation omitted).

We conclude the trial court did not abuse its discretion in this regard. As this Court has recognized:

> The collateral source rule, which is intended to protect tort victims, "provides that payments from a collateral source shall not diminish the damages otherwise recoverable from the wrongdoer." Thus, this rule "prohibits a *defendant* in a personal injury action from introducing evidence of the plaintiff's receipt of benefits from a collateral source for the same injuries which are alleged to have been caused by the defendant."

*Simmons v. Cobb*, 906 A.2d 582, 585 (Pa.Super. 2006) (citations and footnote omitted) (emphasis added). Further, as our Supreme Court has recognized, this rule "was intended to avoid precluding a [plaintiff] from obtaining redress for his or her injury merely because coverage for the injury was provided by some collateral source, *e.g.* insurance." *Beechwoods Flying Service, Inc. v. Al Hamilton Contracting Corp.*, 504 Pa. 618, 476 A.2d 350, 352 (1984). *See Denardo v. Carneval*, 444 A.2d 135, 140 (Pa.Super. 1982) ("Pennsylvania law is clear; the victim of a tort is entitled to the damages caused by the tortfeasor's negligence regardless of compensation the victim receives from other sources.").

In the present case, it was Nazarak, the plaintiff below, who wanted the jury to know that he had received the workers' compensation benefits. Thus, the purpose underlying the collateral source rule—protection of the plaintiff and prevention of a benefit to the alleged wrongdoer—simply was not

implicated. *See Simmons*, *supra*. Accordingly, the trial court did not abuse its discretion in its application of the collateral source rule.

Further, there is no dispute that Nazarak will have to repay the workers' compensation lien from the damages awarded by the jury.[4] *See Liberty Mutual Ins. Co.*, *supra* (noting an employer/workers' compensation carrier may seek subrogation or reimbursement out of a tort recovery by an injured claimant). In such a case, this Court has held that an injured claimant may "plead, prove, and recover" the amount paid by the workers' compensation carrier. *See Ricks v. Nationwide Ins. Co.*, 879 A.2d 796 (Pa.Super. 2005).

_____

[4] Section 319 of Pennsylvania's Workers' Compensation Act provides for an employer's, hence the employer's insurer's, claim to subrogation to the extent of compensation payable. Section 319 provides, in pertinent part:

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe, his personal representative, his estate or his dependents. The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal representative, his estate or his dependents, and shall be treated as an advance payment by the employer on account of any future instalments of compensation.

77 P.S. § 671 (footnote omitted).

Further, we note that, because Nazarak will have to repay the workers'

compensation lien, there is no risk of "double recovery" as alleged by

Appellants, and the jury was free to determine what impact, if any, the

payment of such benefits had on its finding of factual causation and damages.

***See Dale Mfg. Co. v. Bressi***, 491 Pa. 493, 421 A.2d 653 (1980) (holding

where there is subrogation in workers' compensation matters, there is no

double recovery when the claimant recovers for negligence against a third

party); ***Matheny v. West Shore Country Club***, 648 A.2d 24 (Pa.Super.

1994) (holding it is within the exclusive province of the jury, as factfinder, to

hear evidence on damages and decide what amount fairly compensates the

plaintiff).[5]  Accordingly, we conclude the trial court did not abuse its discretion

in permitting Nazarak to introduce evidence of the workers' compensation lien

in his pursuit of damages.

---

[5] Appellants suggest the case *sub judice* is more akin to ***Burke v. Erie Ins. Exchange***, 940 A.2d 472 (Pa.Super. 2007), as opposed to ***Ricks***, ***supra***. Appellants' Brief at 42.  In ***Burke***, this Court concluded the claimant could not plead, prove, or recover workers' compensation benefits in an action involving the injured employee's claim for underinsured motorist benefits against the employer's automobile insurance policy.  In ***Burke***, unlike in the case *sub judice*, the workers' compensation carrier, which was also the vehicle insurance carrier, agreed to forgo the workers' compensation lien such that the employee would not have to repay the workers' compensation benefits. This Court in ***Burke*** concluded that the claimant should not be permitted a "double recovery," *i.e.*, retain the workers' compensation benefits paid to him by the insurance company and then attempt to regain an equal sum as damages in the underinsured motorist suit.  ***See id.***  Such did not occur in the case *sub judice*.

With regard to their next sub-issue, Appellants contend the trial court erred in admitting evidence of Nazarak's compromise and release with regard to his workers' compensation claim. Specifically, Appellants aver the evidence of the compromise and release violated 42 Pa.C.S.A. § 6141, pertaining to the inadmissibility of settlement agreements.[6]

Section 6141 of the Judicial Code provides, in relevant part, the following:

> **§ 6141. Effect of certain settlements**
>
> **(a) Personal injuries.--**Settlement with or any payment made to an injured person or to others on behalf of such injured person with the permission of such injured person or to anyone entitled to recover damages on account of injury or death of such person shall not constitute an admission of liability by the person making the payment or on whose behalf the payment was made, unless the parties to such settlement or payment agree to the contrary.
>
> ***
>
> **(c) Admissibility in evidence.--**Except in an action in which final settlement and release has been pleaded as a complete defense, any settlement or payment referred to in subsections (a) and (b)[7] shall not be admissible in evidence on the trial of any matter.

42 Pa.C.S.A. § 6141(a), (c) (bold in original) (footnote added).

---

[6] In this regard, Appellants aver Liberty Mutual's representative, Ms. Wiest, improperly testified that Nazarak received a lump sum payment due to his compromise and release with regard to his workers' compensation claim. Appellants' Brief at 46.

[7] Subsection (b), which pertains to settlements with regard to damages to property, is not applicable to the case *sub judice*.

Turning to an analysis of 42 Pa.C.S.A. § 6141, the clear and unambiguous words of Subsection (a) provide that settlement with or any payment to an injured person is not "**an admission of liability by the person making the payment or on whose behalf the payment was made[**.]" 42 Pa.C.S.A. § 6141(a) (bold added). *See Hatfield v. Continental Imports, Inc.*, 530 Pa. 551, 610 A.2d 446, 451 (1992) (holding the rules of statutory construction are used to interpret Section 6141).

In the case *sub judice*, there is no dispute that the "settlement" at issue (the workers' compensation compromise and release) was not made by Appellants, and Appellants were not in any way a party to the settlement. Rather, the settlement was made between Nazarak and his employer/employer's workers' compensation carrier, Liberty Mutual. Thus, according to the plain language of Subsection 6141(a), while the settlement does not constitute an admission of liability by Nazarak's employer or Liberty Mutual, it has no effect on the liability of Appellants (the third party tortfeasors). 1 Pa.C.S.A. § 1903 (indicating words and phrases are given their common and approved usage); 1 Pa.C.S.A. § 1921 (indicating when words are clear and free from ambiguity they may not be disregarded).

However, as the trial court noted, Subsection (c) indicates that a settlement referred to in Subsection (a) "**shall not be admissible in evidence on the trial of any matter**." 42 Pa.C.S.A. § 6141(c) (bold added).

Accordingly, when Subsections (a) and (c) are read together, arguably, the settlement at issue was not admissible in the instant trial.

However, to the extent the trial court erred in permitting Nazarak to enter into evidence the fact he settled his workers' compensation claim, we agree with the trial court that the error does not constitute reversible error. As the trial court cogently indicated:

> [Appellants] admitted liability before the trial began and the issue remaining was damages. The existence of the [compromise] and release was not used to improperly imply liability but rather was used to show damages by [Nazarak], and that he was no longer employed. There was no prejudice to [Appellants] due to [Appellants'] acceptance of liability. The jury was not instructed they were bound by the figure [contained in the compromise and release] but were free to accept the evidence as it was presented.
>
> ***
>
> The improper admission of a settlement agreement into evidence does not necessarily constitute reversible error. To constitute reversible error, a ruling on evidence or an instruction to a jury must be shown not only to have been erroneous *but harmful to the party complaining*. The harm inflicted upon the defendant from the introduction of a settlement into evidence results from the jury's tendency to improperly construe a legal settlement as an admission by the settling party to liability. ***Rochester Mach. Corp. v. Mulach Steel Corp.***, 498 Pa. 545, 549, 449 A.2d 1366, 1368 (1982). The admission of a settlement agreement prejudices the plaintiff by resulting in a lower damage award, because the jury may improperly infer that the plaintiff has already been compensated for his or her injuries.
>
> [Appellants] argue that by introducing the figure used by Liberty Mutual to calculate [Nazarak's] damages in the settlement, the fact-finding role of the jury was usurped. [Appellants] argue the jury simply used Liberty Mutual's figures for damages, rather than making an independent finding of damages. The settlement agreement was not prejudicial in that regard. The jury, as fact-finder, is entitled to give as much or as little weight, if any at all, to any piece of evidence that is so desires, and was instructed as such at trial. There is simply no factual or legal basis to support

- 13 -

the conclusion that the jury copied Liberty Mutual's damage calculations into the verdict.

Trial Court Opinion, filed 10/15/18, at 4-5 (citations, quotation marks, and quotations omitted) (emphasis in original).

We agree with the trial court's reasoning and, consequently, conclude that a new trial is not warranted as to this issue. *Ettinger v. Triangle-Pacific Corp.*, 799 A.2d 95, 110 (Pa.Super. 2002) ("To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or [unduly] prejudicial to the complaining party.").[8]

With regard to their next sub-issue, Appellants argue the trial court erred in refusing to give the jury Appellants' proposed supplemental jury instructions numbers 1 and 3. Specifically, Appellants contend the trial court's failure to give the proposed supplemental jury instructions improperly resulted in the jury believing "that Liberty Mutual was owed the full lien amount regardless of the case outcome and that [Nazarak] personally would owe that amount." Appellants' Brief at 57. They also suggest the trial court's instruction did not adequately inform the jury that the workers' compensation

---

[8] Appellants also suggest Liberty Mutual gave up its subrogation rights by voluntarily entering into the compromise and release, thus permitting Nazarak to have a "double recovery." There is no indication that Liberty Mutual waived its right to subrogation in this case. Additionally, as noted by our Supreme Court, the right to subrogation under the Workers' Compensation Act is automatic. *See Thompson v. W.C.A.B. (USF&G Co.)*, 566 Pa. 420, 781 A.2d 1146 (2001).

lien included an award of attorney's fees, which Nazarak would not have to repay.

Appellants' proposed supplemental jury instruction numbers 1 and 3 were as follows:

> 1. Under Pennsylvania's Workers' Compensation Act, an employer or insurance carrier that pays workers' compensation benefits to an injured employee is entitled to recover a portion of the benefits from any award of money the injured employee receives in a civil lawsuit. Section 319 of the Pennsylvania Workers' Compensation Act, 77 P.S. § 671; ***Dep't of Labor & Indus. Bureau of Workers' Comp. v. Workers Compensation Appeal Board (Excelsior Ins.)***, 619 Pa. 29, 33, 58 A.3d 18, 20 (2012).

> ***

> 3. Section 319 of the Workers' Compensation Act provides a mechanism for calculating the portion of the benefits paid that can be recovered by the insurance company under these circumstances. ***Id.*** The calculation will be performed after you have reached your decision here as to whether Mr. Nazarak is entitled to any award in this lawsuit. ***Id.*** If there is no award, Mr. Nazarak does not have to re-pay anyone for the workers' compensation benefits he received. (Section 319 of The Pennsylvania Workers' Compensation Act, 77 P.S. § 671 provides as follows: "Where the compensable injury is caused…by…a third party, the employer [and/or carrier] shall be subrogated to the right of the employee…against such third party to the extent of the compensation payable under this article by the employer [and/or carrier]; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer [and/or carrier] and employee….").

Appellants' Supplemental Proposed Jury Instructions Numbers 1 and 3, filed 6/21/18, at 1-2 (bold omitted).

Initially, we note the following well-established legal precepts:

We review the trial court's jury instructions for an abuse of discretion or legal error controlling the outcome of the case. A jury charge will be found to be adequate unless, when read in its entirety, the charge confused the jury, misled the jury, or contained an omission tantamount to fundamental error. "[I]t must appear that the erroneous instruction may have affected the jury's verdict." Consequently, the trial court has great discretion in forming jury instructions.

*Meyer v. Union R. Co.*, 865 A.2d 857, 862 (Pa.Super. 2004) (citations and quotation omitted).

In the case *sub judice*, the trial court gave the jury the following relevant instruction:

You have heard testimony from a representative of Liberty Mutual Insurance Company that Seth Nazarak received benefits under the Workers' Compensation Act. Here in this civil lawsuit Mr. Nazarak is seeking an award of money. If Mr. Nazarak is successful in this lawsuit and receives an award of damages from you, Liberty Mutual will be entitled to receive reimbursement from the award of damages for a portion of the Workers' Compensation it paid to Mr. Nazarak.

N.T., 6/21/18, at 116-17.

In rejecting Appellants' claim of error, the trial court explained the jury was properly instructed that: (1) Nazarak would be required to repay the workers' compensation lien only if he received an award in the instant case, and (2) in such an event, he would be required to repay only "a portion" of the workers' compensation lien. Accordingly, the trial court concluded it was unnecessary to give Appellants' proposed supplemental jury instructions and any further instruction had the potential to confuse the jury. Trial Court Opinion, filed 10/15/18, at 5-6. We agree with the trial court's analysis and

find no error in this regard. ***See Tincher v. Omega Flex, Inc.***, 628 Pa. 296, 104 A.3d 328 (2014) (holding the trial court has broad discretion in phrasing instructions and may choose its own words so long as the law is clearly, adequately, and accurately presented to the jury).

In issue "B," Appellants present three sub-issues related to the admission and exclusion of expert testimony. Specifically, they contend the trial court erred in permitting Nazarak's vocational expert, Celia Evans, to testify outside the scope of her expert report, permitting the introduction of a non-testifying expert's reports and opinions, and precluding certain cross-examination testimony from Nazarak's expert, Robert Rundorff, M.D.

Initially, Appellants contend the trial court erred in permitting Nazarak's vocational expert, Ms. Evans, to testify outside the scope of her expert report. Specifically, they aver that, over Appellants' objection, Ms. Evans was permitted to opine that Nazarak could not operate a commercial vehicle due to the spinal cord stimulator implanted in his back. Appellants' Brief at 59. Specifically, they note "Ms. Evans was permitted to testify that the presence of a stimulator that is implanted would preclude an individual from getting clearance—medical clearance or their medical papers that allow them to use their commercial driver's license." Appellants' Brief at 59. Appellants contend that, since Ms. Evan's expert report made no mention of Nazarak's inability to work due to a spinal cord stimulator, they were unfairly surprised and

prejudiced by her testimony. *Id.* at 60 (citation to reproduced record omitted).

As indicated *supra*, we review a trial court's evidentiary decisions for an abuse of discretion. *See Schmidt*, *supra*. Moreover, we note:

> Experts may testify at trial concerning matters which are within the fair scope of a pretrial report. The avoidance of unfair surprise to an adversary concerning the facts and substance of an expert's proposed testimony is the primary purpose of the rule requiring that testimony be within the fair scope of the pretrial report. *Walsh v. Kubiak*, 443 Pa.Super. 284, 661 A.2d 416, 419-20 (1995) (*en banc*), *appeal denied*, 543 Pa. 716, 672 A.2d 309 (1996) (citations and quotation marks omitted).

> The fair scope rule is addressed in Pa.R.C.P. 4003.5(c) and provides that an expert witness may not testify on direct examination concerning matters which are either inconsistent with or go beyond the fair scope of matters testified to in discovery proceedings or, as here, included in a separate report. In *Wilkes–Barre Iron & Wire Works, Inc. v. Pargas of Wilkes–Barre, Inc.*, 348 Pa.Super. 285, 502 A.2d 210 (1985), this Court explained that:

>> [I]t is impossible to formulate a hard and fast rule for determining when a particular expert's testimony exceeds the fair scope of his or her pretrial report. Rather, the determination must be made with reference to the particular facts and circumstances of each case. The controlling principle which must guide is whether the purpose of Rule 4003.5 is being served. The purpose of requiring a party to disclose, at his adversary's request, "the substance of the facts and opinions to which the expert is expected to testify" is to avoid unfair surprise by enabling the adversary to prepare a response to the expert testimony. In other words, in deciding whether an expert's trial testimony is within the fair scope of [her] report, the accent is on the word "fair." The question to be answered is whether, under the particular facts and circumstances of the case, the discrepancy between the expert's pretrial report and [her] trial testimony is of a nature which would prevent the adversary from preparing a

- 18 -

> meaningful response, or which would mislead the adversary as to the nature of the appropriate response.

***Hassel v. Franzi***, 207 A.3d 939, 951 (Pa.Super. 2019) (quotation and citations omitted).

In her expert report dated December 13, 2017, Ms. Evans relevantly indicated the following:

> **Employability/Access to the Labor Market**
>
> Prior to the motor vehicle accident of December 10, 2014, Seth Nazarak had approximately ten (10) years of experience working as a Heavy Truck Driver…, operating both dump trucks and flatbed trucks. His skill set is exclusive to this area. Mr. Nazarak never performed work outside of the operation of heavy equipment or trucks and has never utilized technological skills in the performance of work tasks, or on a personal level.
>
> Mr. Nazarak remains vocationally well-suited for the work he performed as a truck driver. However, his physical limitations no longer allow him to perform occupationally required tasks. As such, the residual impact of injuries sustained by Mr. Nazarak in the motor vehicle accident of December 10, 2014, must be addressed. The potential impact of the accident on Mr. Nazarak's vocational potential is evaluated based upon the opinions of Dr. Rundorff and the subject opinion of Mr. Nazarak.
>
> **Future Employability Factors**
>
> • Mr. Nazarak cannot renew the medical card for his CDL, which has precluded him from driving a commercial vehicle since the accident of December 10, 2014.

Celia Evans' Expert Report, dated 12/13/17, at 7 (bold in original).

In concluding Appellants are not entitled to relief, the trial court explained as follows:

> Vocational expert Celia Evans' expert report stated [Nazarak] was qualified to perform as a truck driver, but his physical limitations prevented him from doing so, and he is unable

to renew his CDL because of the medical issues stemming from the accident. At trial, Ms. Evans testified [Nazarak] was prevented from renewing his CDL due to his spinal cord stimulator and his [taking of prescribed] pain medication. The spinal cord stimulator was inserted after Ms. Evans prepared her report….[Appellants] were aware Ms. Evans would be testifying [Nazarak] was unable to return to work, and her testimony was consistent with her report in that regard. Her testimony was within the fair scope of her report.

Trial Court Opinion, filed 10/15/18, at 6.

In applying the controlling authority herein, we conclude the trial court committed no error of law and acted well within the proper scope of discretion in admitting the challenged testimony. **See Hassel**, **supra**. Under the particular facts and circumstances of this case, any discrepancy between Ms. Evans' expert report and her trial testimony was not of a nature that prevented Appellants from preparing a meaningful response or misled them. **See id.**

With regard to their next sub-issue, Appellants contend Charles J. Harvey, D.O.'s references to the report and opinions of a non-testifying neuroradiologist, Michael Brooks, M.D., constituted inadmissible hearsay requiring a new trial. Specifically, Appellants aver Dr. Harvey, an orthopedic surgeon, was improperly permitted to read into the record the opinions of Dr. Brooks, which were contained in Dr. Brooks' expert report, regarding a December 22, 2014, MRI of Nazarak's spine. **See** Appellants' Brief at 63-64. Appellants aver Dr. Harvey acted as a "mere conduit" for Dr. Brooks' opinions, thus improperly bolstering his own credibility.

Pennsylvania Rule of Evidence 703 provides the following:

**Rule 703. Bases of opinion testimony by experts**

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing.  If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Pa.R.E. 703 (bold in original).

While it is true that "an expert may not act as a 'mere conduit or transmitter of the content of an extrajudicial judicial source[,]'" ***Woodard v. Chatterjee***, 827 A.2d 433, 444 (Pa.Super. 2003), there is a well-settled exception to the hearsay rule in which an expert may express an opinion based, in part, upon reports or the opinions of other experts provided such reports or opinions are of a type customarily relied upon by experts in the field.  ***Primavera v. Celotex Corp.***, 608 A.2d 515, 521 (Pa.Super. 1992).  In sum:

An "expert" should not be permitted simply to repeat another's opinion or data without bringing to bear on it his own expertise and judgment.  Obviously in such a situation, the non-testifying expert is not on the witness stand and truly is unavailable for cross-examination.  The applicability of the rule permitting experts to express opinions relying on extrajudicial data depends on the circumstances of the particular case and demands the exercise, like the admission of all expert testimony, of the sound discretion of the trial court.  Where…the expert uses several sources to arrive at his or her opinion, and has noted the reasonable and ordinary reliance on similar sources by experts in the field, and has coupled this reliance with personal observation, knowledge and experience,…the expert's testimony should be permitted.

***Id.*** (footnote omitted).

- 21 -

In the case *sub judice*, Appellants contend the trial court erred in permitting Dr. Harvey to testify, over their objection, as follows on direct-examination by Nazarak's counsel:[9]

> **Q.** And, Doctor, of the diagnostic studies that you reviewed, which were the most relevant in forming your opinions and conclusions as outlined in your section of your report entitled work-related diagnosis and discussion?
>
> **A.** The three MRIs of his lumbar spine were significant. The first being December 22nd, 2014; the second being done September 21st, 2015; and the third being done February 8th, 2017.
>
> **Q.** And, Doctor, did you have an opportunity to review an expert report authored by a neuroradiologist, Dr. Michael Brooks—
>
> ***
>
> **A.** Yes, I reviewed a report authored by Dr. Brooks dated June 26th, 2016.
>
> **Q.** And, Doctor, what information did you take from Dr. Brooks' report and incorporated into your opinions and conclusions in your report?
>
> **A.** Dr. Brooks reviewed the Windber Hospital MRI of 12/22/14, which demonstrated a herniated disc at L4-5. He then reviewed the MRI done at Conemaugh Hospital on September 21st, 2015, which showed a redemonstration of that same herniated disc at L4-5 and it actually had increased in size.
>
> **Q.** And, Doctor, your review of that report from Dr. Brooks and his review of the films, why is that important to your ultimate opinions and conclusions in this matter?
>
> ***
>
> **The Witness:** Dr. Brooks pointed out that on the initial MRI done at Windber Hospital on 12/22/14 that there was increased signal, he uses the term hyperintense, but there's actually increased signal on the T2 weighted images which points towards acuity of—of the injury. And he also states that there's no associated osteophyte formation. An osteophyte would have led

---

[9] We note Dr. Harvey's videotaped deposition was presented to the jury.

us to believe it was an older injury. Therefore, the MRI of 12/22/14 supports an acute injury.

Dr. Harvey's Videotaped Deposition, dated 6/11/18, at 15-17.

Here, contrary to Appellants' assertion, Dr. Harvey acted as an expert and not as a mere conduit or transmitter of the content of an extrajudicial source. **See Primavera**, **supra**. That is, he did not simply repeat Dr. Brooks' opinion or data without bringing to bear on it his own expertise and judgment. **See id.**

In this vein, we note Dr. Harvey testified, to a reasonable degree of medical certainty, that Nazarak suffered a "new injury" to his spine and required a spinal cord stimulator implant because of the instant accident. Dr. Harvey's Videotaped Deposition, dated 6/11/18, at 28-29. In offering this opinion, he indicated that, on February 8, 2018, he performed the surgery in which the spinal cord stimulator was implanted into Nazarak's spine. **See** Dr. Harvey's Videotaped Deposition, dated 6/11/18, at 11. He noted that, during his initial examination of Nazarak on January 26, 2018, Nazarak provided him with his medical history. **Id.** at 20. Further, as part of his practice, Dr. Harvey routinely reviews his patient's prior radiographs, CT scans, and MRIs. **Id.** at 7-8. He noted that, in preparing an expert report relative to Nazarak's spinal cord stimulator surgery, he reviewed Nazarak's "voluminous medical records[,]" as well as his "treatment records[.]" **Id.** at 8, 31.

Consequently, contrary to Appellants' assertion, Dr. Harvey based his opinions on the history he obtained, the surgery he performed, and his review

of many medical records—including Dr. Brooks' report in connection with the MRIs—all of which necessarily entailed his personal knowledge and experience. **Woodard**, 827 A.2d at 444 ("[W]hen the expert witness has consulted numerous sources, and uses that information, together with his own professional knowledge and experience, to arrive at his opinion, that opinion is regarded as evidence in its own right and not as [inadmissible] hearsay in disguise."). Dr. Harvey noted the records he reviewed and how his opinion was impacted by those records. **See id.** His testimony did not merely "parrot" Dr. Brooks' report regarding the MRIs; but rather, it was used in forming his own opinion. **Id.** Accordingly, the trial court properly rejected Appellants' argument that Dr. Harvey was a mere conduit for the report and opinions of Dr. Brooks. **Id.**

With regard to their next sub-issue, Appellants contend the trial court erred in excluding portions of Robert Rundorff, M.D.'s testimony on cross-examination.[10] Specifically, Appellants aver the trial court erred in excluding Dr. Rundorff's opinion on cross-examination that "it's possible that the radiographic findings exhibited following [Nazarak's] December 2014 injury would have been the same as had studies been done in November of 2014." Dr. Rundorff's Videotaped Deposition, dated 6/13/18, at 64-65. **See**

---

[10] We note Dr. Rundorff's videotaped deposition was presented to the jury.

Appellants' Brief at 68. In this vein, they point to the following portion of Appellants' cross-examination of Dr. Rundorff:

> Q. Dr. Rundorff, are you aware of any—did you review any diagnostic testing between December 22nd, 2014 when Mr. Nazarak had an MRI taken on his lumbar spine and November of—November 15, 2014 when he had [a] reported heavy lifting incident?
>
> A. No, sir.
>
> Q. Okay. Would it be fair to say that without diagnose—diagnostic testing between November 15, 2014 and December 22nd, 2014, it is impossible to determine whether or not Mr. Nazarak's lumbar spine was in the same condition on November 15, 2014 that it was on—when—when the MRI was taken on December 22nd, 2014?
>
> A. It would be fair to say that one cannot judge any change in radiographic findings if there were no preceding studies that had been performed.
>
> **Q. So you would agree though that it is possible that Mr. Nazarak's lumbar spine was in the same condition on November 15, 2014 that it was found in December 22nd, 2014, wouldn't that be true?**
>
> **[Nazarak's counsel]: Objection. There's no medical evidence to suggest that, there's no expert testimony to suggest that, and defense counsel is not a doctor. So the fact that there was no—there was no MRI taken between the two, you can't make the assumption that the spine would have been the same. That's not proper. If Dr. Buckwalter wanted to make that—offered that testimony, he would have and he didn't.**
>
> **[Appellants' counsel]: I think I can ask the doctor—**
>
> **[Nazarak's counsel]: You can ask all you want, but you're not a medical doctor, you're a JD.**
>
> **[Appellants' counsel]: I—no, I agree. I'm not. That's why I'm asking Dr. Rundorff.**
>
> **[Nazarak's counsel]: Okay. And I'm certainly not giving in on that. Dr. Buckwalter didn't even opine on that, so....**

- 25 -

**THE WITNESS: Repeat the question, please.**

**[Appellants' counsel]: Can you read that back for me?**

**(Question read.)**

**THE WITNESS: It's my opinion that it's possible that the radiographic findings exhibited following the December 2014 injury would have been the same as had studies been done in November of 2014. Although having said that, as far as the condition of the spine, the condition of the spine is lumbosacral strain which is my opinion as far as what Mr. Nazarak sustained is a clinical diagnosis rather than a radiographic diagnosis.**

Dr. Rundorff's Videotaped Deposition, dated 6/13/18, at 63-65 (bold added).[11]

The trial court explained that it excluded the deposition testimony indicated in bold above on the basis Dr. Rundorff's opinion was not reached within a reasonable degree of medical or scientific certainty, and the testimony was akin to "mere conjecture." Trial Court Opinion, filed 10/15/18, at 7.

"[T]he scope of cross-examination is within the sound discretion of the trial court, and we will not reverse the trial court's exercise of discretion in absence of an abuse of that discretion." *Jacobs v. Chatwani*, 922 A.2d 950, 965 (Pa.Super. 2007). Further, trial courts have sound discretion to admit or preclude expert testimony. *Kelly v. Thackray Crane Rental, Inc.*, 874 A.2d 649 (Pa.Super. 2005).

> It is well settled that expert testimony is incompetent if it lacks an adequate basis in fact. The expert is allowed only to assume the truth of testimony already in evidence. *Hussey v.*

---

[11] We note the bolded portions of the above excerpt were not presented to the jury. That is, the trial court excluded this portion of Dr. Rundorff's videotaped deposition testimony.

- 26 -

*May Dept. Stores, Inc.*, 238 Pa.Super. 431, 357 A.2d 635, 637 (1976) [(*en banc*)]. While an expert's opinion need not be based on an absolute certainty, an opinion based on mere possibilities is not competent evidence. *Niggel v. Sears, Roebuck and Co.*, 219 Pa.Super. 353, 281 A.2d 718 (1971) [(*en banc*)]. This means that expert testimony cannot be based solely upon conjecture or surmise. An expert must do more than guess. His or her assumptions must be based upon such facts as the jury would be warranted in finding from the evidence. *Houston v. Canon Bowl, Inc.*, 443 Pa. 383, 278 A.2d 908 (1971).

*Viener v. Jacobs*, 834 A.2d 546, 558 (Pa.Super. 2003).

That an expert may have used less definite language does not render his entire opinion speculative if at some time during his testimony he expressed his opinion with reasonable certainty. The expert need not testify with absolute certainty or rule out all possible alternative causes of the plaintiff's injury. However, the expert does *not* meet the required standard of certainty if he or she testifies that the alleged cause 'possibly', or 'could have' led to the result…or even that it was 'very highly probable' that it caused the result. Expert testimony that does not meet the standard of reasonable degree of medical certainty is properly excluded.

*Winschel v. Jain*, 925 A.2d 782, 794 (Pa.Super. 2007) (citations omitted) (emphasis in original).

Here, Appellants sought to establish that Nazarak sustained his lumbar spine injury because of a heavy lifting accident that occurred on November 15, 2014, as opposed to the instant vehicle accident that occurred on December 10, 2014. That is, they sought to establish Nazarak's injury was a pre-existing condition of the instant vehicle accident. However, while Nazarak had an MRI taken on December 22, 2014, after the vehicle accident, he did not have an MRI taken any time between the date of the heavy lifting accident (November 15, 2014) and the December 22, 2014, MRI. As Appellants

admitted during the questioning of Dr. Rundorff on cross-examination, since there was no MRI taken between November 15, 2014, and December 22, 2014, it was "impossible" to determine from the past diagnostic testing whether Nazarak's lumber spine injury was a pre-existing condition. Accordingly, as the trial court properly determined, Dr. Rundorff's testimony that "it's possible that the radiographic findings exhibited following the December 2014 injury would have been the same as had studies been done in November of 2014," was based on mere speculation and conjecture. **See Viener**, **supra**. Further, the manner in which Dr. Rundorff expressed his opinion was conjectural. **See Winschel**, **supra**. Consequently, we conclude the trial court did not abuse its discretion in precluding this portion of Dr. Rundorff's cross-examination.

In issue "C," Appellants present two sub-issues claiming improper references were made by Nazarak's counsel at trial. Specifically, they contend Nazarak's counsel made an improper reference during closing argument, and Nazarak's counsel's solicitation of certain testimony from Waite requires a new trial.

Initially, Appellants contend that, during closing argument, Nazarak's counsel made an improper reference to the fact that Appellants did not call a vocational or economic expert to contradict Nazarak's economic expert witness. Appellants suggest Nazarak's counsel asked the jury to draw an

improper adverse inference from Appellants' failure to call such an expert witness.

Appellants specifically challenge the following portion of Nazarak's counsel's closing argument:

> **[Nazarak's counsel:** I want to go back to what [Appellants' counsel] was saying in the opening and I think a little bit today in talking about why our office or why Mr. Nazarak has a vocational and economic expert, and I think I would then turn to her and say why don't you have an expert in either one of those fields? I think that's an interesting question. If there is a Functional Capacity Evaluation that says he can't go back to work, and you are required to give that to your vocational expert, whether it's for me or for [Appellants' counsel], what do you think the person is going to say? Based upon this testing, he can't go back to work. So why would they want that opinion? I don't know if that's what happened but they don't have an expert here.
>
> And the economist will do the same thing. You know, wait a second. It's not going to be good for you. This person said he can't work anymore. That number is going to get extrapolated out of the time. That's going to be millions of dollars. Do you understand that? We don't want you. Again I don't know if that's what happened, but, look, common sense. Ask yourself what— you know.

N.T., 6/21/18, 91-92.[12]

"The decision to issue a missing witness instruction, or alternatively whether to permit counsel to make an argument on closing equivalent to such an instruction, 'is a matter within the trial court's discretion which this Court will not overturn absent manifest abuse.'" **Hawkey v. Peirsel**, 869 A.2d 983,

---

[12] We note Appellants objected to this portion of Nazarak's counsel's closing argument. **See** N.T., 6/21/18, at 97.

- 29 -

986 (Pa.Super. 2005) (quotation omitted). Although the bulk of relevant case law pertains to a trial court's refusal to issue a jury instruction, the appellate courts have observed that in such a case "it is the inference itself that is prohibited, whether it comes from opposing counsel or the court in its instructions." *Id.* at 986 (quoting *Bennett v. Sakel*, 555 Pa. 560, 725 A.2d 1195, 1196 (1999) (other quotation and emphasis omitted)).

> Generally, when a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not be merely cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference it would have been unfavorable.

*Kovach v. Solomon*, 732 A.2d 1, 8–9 (Pa.Super. 1999) (citation and emphasis). *See O'Rourke v. Rao*, 602 A.2d 362, 364 (Pa.Super. 1992) (observing that "the witness must be within the control of the party in whose interest it would naturally be to produce him. Absent a showing of the witness' unavailability to the party seeking the inference, no inference can be taken.") (citations omitted)). "[T]he burden is on the party seeking the inference to demonstrate the missing witness's unavailability." *Hawkey*, 869 A.2d at 987.

Here, in explaining the reasons it overruled Appellants' objection to the above quoted portion of Nazarak's counsel's closing argument, the trial court relevantly indicated the following:

> [A]n expert for [Appellants] would only have been available to [Appellants]. The evidence would have been material to damages, [as well as Appellants'] rebuttal to [Nazarak's] ability to work. The testimony would not have been cumulative, and the

- 30 -

testimony would have been evidence contrary to what [Nazarak] presented.

Trial Court Opinion, filed 10/15/18, at 8. Accordingly, the trial court concluded Nazarak's counsel's statement suggesting the jury draw an adverse inference from Appellants' failure to present a vocational or economic expert did not require a new trial. *Id.* We find no error in this regard. *Hawkey*, *supra*.

In their final sub-issue, Appellants contend Nazarak's counsel's solicitation of testimony from Waite regarding the possible cause of the accident, *i.e.*, the brakes on the truck he was driving failed, requires a new trial. Specifically, Appellants challenge the following portions of Nazarak's counsel's direct-examination of Waite:

**Q.** Mr. Waite, you understand the attorney, Pam Collis, both of you and Haranin Construction, has admitted fault for this crash? Do you understand that?

**A.** Yeah.

**Q.** And you are aware of that and you are not here to contest that, are you?

**A.** No.

**Q.** And you believe that you were at fault for this crash, not Mr. Nazarak?

**A.** I believe it was done but something more out of control. I didn't actually cause the crash. I mean, I tried to stop and couldn't because my breaks [*sic*] failed.

**Q.** Do you believe Mr. Waite in any way, shape, or form that my client Mr. Nazarak was at fault in any way for this crash?

**A.** No.

**Q.** Thank you. I appreciate you being here.

***

(Whereupon, the following conversation was held at side bar:)

- 31 -

***

**[Appellants' counsel]:** I move to strike testimony regarding the break [*sic*] failure because [Nazarak's counsel] deliberately asked this man if he was at fault when we have already stipulated to that and we didn't need to have that testimony.

**The Court:** We didn't need to have the testimony. So what do you want me to say.

**[Nazarak's counsel]:** Well the question was asked whether he believed and agreeing that he was at fault.

**[Appellants' counsel]:** Right. And we did not need to have this testimony or elicited the testimony about the break [*sic*] failure deliberately. I told you we were going to get into this, Judge. That's the problem.

**The Court:** All right. So I will strike that. Tell them—

**[Nazarak's counsel]:** That's fine.

**[Appellants' counsel]:** Thanks.

**The Court:** Do you want me to do that now?

**[Nazarak's counsel]:** Thank you.

(End of side bar.)

**The Court:** There was testimony that the break [*sic*] —he said that the breaks [*sic*] failed. That is to be stricken. You are not to consider that.

N.T., 6/19/18, at 101-02.

As is evident, the trial court sustained Appellants' counsel's objection, ordered the challenged testimony be stricken, and gave the jury a curative instruction. Appellants did not object to the curative instruction. Accordingly, no further relief is warranted. *See **Mount Olivet Tabernacle Church v. Edwin L. Wiegand Div.**, 781 A.2d 1263 (Pa.Super. 2001).

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/2/2019