J-A24021-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHARLES BRANDT, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF SALLY BRANDT | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : : | |
| v. | : : : : | No. 940 EDA 2019 |
| BON-TON STORES INC A/K/A-POMEROY'S DEPARTMENT STORE, AKA- POMEROY'S INC., CHARLES B. CHRYSTAL COMPANY, INC., COLGATE-PALMOLIVE COMPANY, WHITTAKER, CLARK & DANIELS, INC. C/O JOSEPH K. COBUZION, ESQ., IMERYS TALC AMERICA, INC. CORPORATION SERVICE COMPANY AKA- AMERICAN TALC CO.; AND RESO AKA- CHARLES MATHIERS, INC; METR AKA- LUZENAC AMER. INC; CYPRUS T | : : : : : : : : : : : : : : | |

Appeal from the Order Entered February 8, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  December Term, 2015, No. 02987

BEFORE:   BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED FEBRUARY 21, 2020**

Appellant, Charles Brandt, individually and as executor of the Estate of Sally Brandt, appeal from the Order entered February 8, 2019, which granted Appellee Colgate-Palmolive Company summary judgment in this asbestos litigation.  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Sally Brandt ("Decedent") used Appellee's product, Cashmere Bouquet talcum powder, daily from approximately 1956 until 1970.[1]  In November 2014, a physician diagnosed the Decedent with malignant pleural mesothelioma.  The Decedent died in February 2018.

Prior to her death, the Decedent and her husband commenced this litigation, asserting that Cashmere Bouquet had been contaminated with asbestos.  Second Amended Complaint, 7/20/18, at 2.  According to Appellant, her exposure to asbestos-contaminated Cashmere Bouquet was the direct and proximate cause of her disease.  *Id.*

Appellee did not design or formulate Cashmere Bouquet to contain asbestos. Rather, Appellant alleged that the talc in Cashmere Bouquet was contaminated with asbestos.  Thus, Appellant needed to establish that Cashmere Bouquet exposed the Decedent to asbestos to such a degree that such exposure caused her mesothelioma.  In order to do so, Appellant proffered testimony from several experts relevant to this appeal: (1) Dr. Ronald Dodson, a biological microscopist; (2) Ms. Susan Raterman, an industrial hygienist; and (3) Dr. John Maddox, a pathologist.

Appellant proffered Dr. Dodson's expert opinion to establish the existence of asbestos in the lung tissue of the Decedent. Dr. Dodson, however, could not independently conclude that the sample from the Decedent's lung

---

[1] Prior to that time, Ms. Brandt lived with family members who also used Cashmere Bouquet talcum powder.

- 2 -

tissue contained asbestos because when he examined a sample of the Decedent's lung tissue for ferruginous bodies using a light microscope, he did not observe ferruginous bodies in the sample. *Id.* at 55. Nevertheless, Dr. Dodson forwarded this sample of lung tissue to Mr. Lee Poye for additional evaluation using an electron microscope. *Id.* at 61-62. Mr. Poye was able to conclude that there were asbestos fibers in the sample of the lung tissue. *Id.* at 62. Dr. Dodson incorporated Mr. Poye's evaluation into his report, thus concluding that since there was asbestos in the sample of lung tissue, the Decedent had been exposed to asbestos. *Id.* at 62, 72.

Also, Appellant presented the expert report of Ms. Raterman to establish the extent to which Cashmere Bouquet caused the Decedent to be exposed to asbestos. According to Ms. Raterman, air sample testing performed by Dr. John Millette established the presence of asbestos fibers released into the air during use of Cashmere Bouquet. *See* N.T. Raterman Deposition, 1/18/19, at 129-33. Ms. Raterman opined that the Decedent's exposure to asbestos was "significant" because she had used Cashmere Bouquet, quantifying Ms. Brandt's exposure as potentially "10,000 times background [levels normally present in the environment]." *Id.* at 181.

In turn, Dr. Maddox premised his causation testimony upon the conclusions of Ms. Raterman that Cashmere Bouquet exposed Mrs. Brandt to 10,000 times background levels normally present in the environment. N.T. Maddox Deposition, 1/29/19, at 92-93. According to Dr. Maddox, the

Decedent's cumulative exposure to asbestos from Cashmere Bouquet talcum powder was a substantial factor in causing her disease. *Id.* at 93, 96, 97.

In July 2018, Appellee filed a Motion *in Limine* seeking to preclude Dr. Dodson from testifying at trial about Dr. Poye's conclusion that Dr. Poye discovered asbestos in the Decedent's sample of lung tissue. In particular, Appellee objected to Dr. Dodson relying on the contents of the expert report of Mr. Poye. According to Appellee, such testimony was inadmissible as hearsay because Mr. Poye was not a testifying expert in Appellant's case. Appellee's Motion *in Limine* ("Dodson Motion"), 7/23/18, at 1. Appellee further asserted that Dr. Dodson lacked the foundation necessary to opine whether Mr. Poye's results and opinions were scientifically reliable. *Id.* at 1-2.

Similarly, in January 2019, Appellee filed a Motion *in Limine* seeking to preclude evidence of talcum powder testing performed by Dr. Millette about the extent to which Ms. Brandt was exposed to asbestos. According to Appellee, the evidence was inadmissible hearsay because Dr. Millette was not testifying in Appellant's case. Appellee's Motion *in Limine* ("Millette Order"), 1/25/19, at 2. Additionally, Appellees asserted that Dr. Millette's test results and opinions were inadmissible because his methodology was scientifically unreliable. *Id.*

In February 2019, the trial court granted both of these motions. Trial Ct. Order ("Dodson Order"), 2/5/19; Trial Ct. Order ("Millette Order"), 2/5/19.

Based on the exclusion of Dr. Millette's scientific evidence and opinions, Appellee renewed its prior motion for summary judgment, asserting that Appellants were unable to establish that the Decedent was exposed to asbestos-contaminated Cashmere Bouquet and, therefore, unable to establish causation. Appellee's Renewed Motion for Summary Judgment, 2/7/19; N.T. Summary Judgment Argument, 2/7/19, at 47-48; *see also* Appellee's Motion for Summary Judgment, 1/10/17. Following argument, the trial court granted Appellee summary judgment. Trial Ct. Order (S.J. Order), 2/8/19; *see also* Trial Ct. Op., 4/11/19, at 7 (specifically concluding that Appellant failed to present evidence that "Ms. Brandt was exposed to sufficient levels of airborne asbestos with sufficient frequency to cause her disease from the use of Cashmere Bouquet").

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) Statement. The trial court issued a responsive Opinion.

Appellant raises the following issues on appeal, restated for clarity and reordered for ease of analysis:

1. Whether the trial court abused its discretion in precluding the expert testing results and opinions of (a) Dr. James Millette and (b) Mr. Lee Poye; and

2. Absent this evidence, whether there was nonetheless evidence of Ms. Brandt's exposure to asbestos fibers emitted from Appellee's Cashmere Bouquet talcum powder in sufficient quantities such that her exposure was a substantial factor in causing her disease and, therefore, whether this evidence was sufficient to withstand summary judgment.

*See* Appellant's Br. at 4.

- 5 -

Appellant asserts that the trial court abused its discretion in precluding Ms. Raterman from testifying about testing results and opinions of Dr. James Millette regarding the extent to which the Decedent's use of Cashmere Bouquet resulted in her exposure to asbestos. Appellant's Br. at 23. According to Appellant, Pennsylvania Rule of Evidence 703 permits Ms. Raterman's reliance upon this evidence—otherwise inadmissible as hearsay— in formulating her expert opinion. *Id.* at 24-33. We disagree.

The admissibility of evidence is within the sound discretion of the trial court. **Estate of Hicks v. Dana Cos., LLC**, 984 A.2d 943, 961 (Pa. Super. 2009). We review a court's evidentiary rulings for an abuse of discretion. **Id.** An abuse of discretion requires "manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." **Nazarak v. Waite**, 216 A.3d 1093, 1100 (Pa. Super. 2019) (citation omitted).

Rule 703 provides that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Pa.R.E. 703. "If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." **Id.**

Thus, for example, "[i]t is well understood that medical experts are permitted to express opinions which are based, in part, upon reports which are not in evidence, but which are customarily relied upon by experts in the practice of the profession." **Primavera v. Celotex Corp.**, 608 A.2d 515, 518

(Pa. Super. 2003) (permitting expert medical testimony that incorporated extrajudicial diagnostic and surgical reports of plaintiff's lung disease).[2]

However, "[a]n 'expert' should not be permitted simply to repeat another's opinion or data without bringing to bear on it [her] own expertise and judgment." *Id.* at 521; Pa.R.E. 703, *Cmt.* ("An expert witness cannot be a mere conduit for the opinion of another."); *see, e.g.*, *Foster v. McKeesport Hosp.*, 394 A.2d 1031, 1033 (Pa. Super. 1978) (holding expert opinion, quoting verbatim from another expert's report, inadmissible because it was based on nothing more than belief that the non-testifying expert was competent).

The applicability of Rule 703 depends on the circumstances of the particular case. *Primavera*, 608 A.2d at 521. Where the extrajudicial evidence is scientific in nature, but novel or of questionable reliability, it is necessary for the trial court to consider whether the "methodology that underlies the evidence has "general acceptance in the relevant scientific community." *Grady v. Frito-Lay, Inc.*, 839 A.2d 1038, 1044 (Pa. 2003) (citation omitted). It is well settled in Pennsylvania that "the proponent of expert scientific evidence bears the burden of establishing all of the elements for its admission under Pa.R.E. 702, which includes showing that the *Frye* rule

---

[2] In *Primavera*, we recognized that the most widely recognized application of this exception to the hearsay rule involved medical testimony, but we did not limit application to medical testimony. *Id.* at 518 n.4.

[of general acceptance] is satisfied." **Id.** at 1045; **see also** Daniel J. Anders, Ohlbaum on the Pennsylvania Rules of Evidence § 703.10 (2020 ed. LexisNexis Matthew Bender).[3]

Our review of Ms. Raterman's testimony reveals that she served solely as a conduit for Dr. Millette's expert testing and opinions about the extent to which Cashmere Bouquet exposed the Decedent to asbestos. Ms. Raterman quoted verbatim and at considerable length from Dr. Millette's reports. **See** N.T. Raterman Deposition at 124-66. She did not rely on this extrajudicial evidence to formulate her own, independent, expert opinion. Rather, as noted by the trial court, Ms. Raterman was merely "parroting" Dr. Millette's scientific evidence. **See** Trial Ct. Op., 4/11/19, at 7.

Further, notwithstanding Ms. Raterman's specific assertion that she has "relied on Dr. Millette's work in other circumstances" and that she commonly relies on this type of evidence, other courts have found Dr. Millette's scientific evidence in this area to be scientifically unreliable. N.T. Raterman Deposition at 138; Trial Ct. Op. at 9 (noting that another jurisdiction had excluded testimony from Millette following a **Frye** hearing).

Under the circumstances of this particular case, Rule 703 does not apply to permit Appellant to use Ms. Raterman as an expert to establish the extent to which Cashmere Bouquet exposed the Decedent to asbestos because she is merely parroting the expert opinion of Dr. Millette and does no independent

---

[3] **Frye v. United States**, 293 F. 1013 (D.C. Cir. 1913).

analysis of her own. ***Primavera***, 608 A.2d at 521. Moreover, in our view, to hold otherwise would empower litigants to avoid strategically a ***Frye*** challenge to novel or potentially unreliable scientific evidence by parroting such evidence. We decline to do so. Therefore, we discern no abuse of discretion in the trial court's decision to preclude Ms. Raterman's expert testimony. ***Estate of Hicks***, 984 A.2d at 961.

For similar reasons, we also reject Appellant's assertion that the trial court erred in precluding Dr. Dodson from presenting Mr. Poye's analysis of the Decedent's lung tissue sample. ***See*** Appellant's Br. at 33-35. According to Dr. Dodson, Mr. Poye observed asbestos fibers in the sample tissue using an electron microscope. N.T. Dodson Deposition at 61-62. However, as noted by the trial court, "Dr. Dodson neither conducted the testing himself[,] nor was he present while the testing was taking place." Trial Ct. Op. at 9. Rule 703 does not permit an expert to serve as a mere conduit for the opinion of another. ***Primavera***, 608 A.2d at 521.

Finally, we reject Appellant's contention that even without Ms. Raterman's testimony about the extent to which the Decedent was exposed to asbestos, they proffered sufficient evidence nonetheless to withstand summary judgment. ***See*** Appellant's Br. at 14-22.

Summary judgment is appropriate where "the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." ***Summers v. Certainteed Corp.***, 997 A.2d 1152, 1159 (Pa. 2010) (citation omitted). The

trial court must consider facts of record and all reasonable inferences derived therefrom in the light most favorable to the non-moving party; it must resolve any doubts as to the existence of a genuine issue of material fact against the moving party; and it may grant summary judgment only where the right to such judgment is "clear and free from all doubt." *Id.* (citation omitted). Whether there is a genuine issue of material fact presents a question of law, which on appeal we review *de novo*. *Id.*

In the simplest terms, an asbestos plaintiff must establish that use of a defendant's product exposed the plaintiff to airborne asbestos fibers and that this exposure occurred with sufficient frequency, regularity, and proximity such that a fact-finder may infer that the plaintiff's exposure was a substantial factor in causing her harm. *Rost v. Ford Motor Co.*, 151 A.3d 1032, 1052-53 (Pa. 2016) (requiring (1) exposures to asbestos that satisfy the "frequency-regularity, and proximity" test and (2) competent medical testimony establishing substantial factor causation); *Gregg v. V-J Auto Parts, Co.*, 943 A.2d 216, 225-26 (Pa. 2007); *Krauss v. Trane U.S. Inc.*, 104 A.3d 556, 563 (Pa. Super. 2014) ("[A] plaintiff must present evidence to show that he inhaled asbestos fibers shed by the specific manufacturer's product.") (quoting *Eckenrod v. GAF Corp.*, 544 A.2d 50, 52-53 (Pa. Super. 1988)).

According to Appellant, the record demonstrates that the Decedent used Cashmere Bouquet talcum powder regularly, over a considerable period. Appellant's Br. at 16. In addition, Appellant references geological evidence suggesting that the talc sources used in Appellee's product were contaminated

with asbestos. *Id.* Solely based on this evidence, Appellant asserts, there was an adequate evidentiary foundation for Dr. Maddox to opine, with a reasonable degree of medical certainty, that the Decedent's use of Cashmere Bouquet talcum powder was a substantial factor in the development of her disease. *Id.* at 21-22.

The record does not support this assertion. Rather, as conceded subsequently by Appellant, *see id.* at 22, Dr. Maddox premised his causation testimony on the opinions of Ms. Raterman regarding the extent to which the decedent was exposed to asbestos:

> Q. Okay. Based upon your review of Mrs. Raterman's report, Mrs. Brandt's medical records, the deposition testimony by Mrs. Brandt and her sisters, do you have an opinion within a reasonable degree of medical certainty as to what caused Mrs. Brandt's mesothelioma?
>
> . . .
>
> [Dr. Maddox:] Yes, sir. I believe that her malignant mesothelioma was caused by her cumulative asbestos exposure, including, most significantly, her exposure to asbestos from [Cashmere Bouquet] talcum powder usage.

N.T. Maddox Deposition, 1/29/19, at 93.

Further, when asked to assume that the exposure testimony of Ms. Raterman was accurate, specifically that Ms. Brandt's daily use of Cashmere Bouquet resulted in exposure to asbestos at levels "likely on the order of 10,000 times background or more", Dr. Maddox opined, "I believe that the exposures that you have just described were the cause of her lethal malignant mesothelioma." *Id.* at 96-97; *see* N.T. Raterman Deposition at 181

(quantifying the Decedent's exposure as potentially "10,000 times background [levels normally present in the environment]").

Because Ms. Raterman was merely parroting another expert's opinion, the trial court properly excluded her exposure testimony. ***See supra***. Therefore, Dr. Maddox's causation testimony was without an adequate evidentiary foundation. Absent competent medical testimony establishing substantial factor causation, summary judgment was appropriate in this case. ***See Rost***, 151 A.3d at 1052-53; ***Krauss***, 104 A.3d at 568 ("A plaintiff cannot survive summary judgment when mere speculation would be required for the jury to find in plaintiff's favor."). Accordingly, we affirm the trial court's decision.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/21/20