J-A16033-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOHN COSTELLO D/B/A THE BROWN BARN CAFE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| AH! SOME CHOCOLATES, LLC, THERESA NOVAK, MARY HEPNER | : | No. 1197 MDA 2019 |

Appeal from the Judgment Entered August 13, 2019
in the Court of Common Pleas of Luzerne County
Civil Division at No(s):  2014-12172

BEFORE:  PANELLA, P.J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED OCTOBER 22, 2020**

John Costello ("Costello") D/B/A The Brown Barn Café appeals from the Judgment entered in his favor, and against Ah! Some Chocolates, LLC ("Ah! Some Chocolates"), Theresa Novak ("Novak"), and Mary Hepner ("Hepner")[1] (collectively, the "Defendants"), and awarding him damages in the amount of $2,750.00, plus costs.  We affirm.

On November 12, 2014,[2] Costello filed a Complaint alleging the following facts:

_____

[1] Together, Novak and Hepner will, at times, be referred to as "the individual Defendants."

[2] Costello had previously filed a Complaint in the magisterial district court. The district court awarded Costello $2,750.00, plus $1,000.00 in attorney's fees, and costs.  Defendants filed an appeal _de novo_ to the Court of Common Pleas.  **_See_** Trial Court Opinion, 12/26/19, at 1 & n.1.

3. … Novak and Hepner operated a chocolate business on a portion of [the premises located at 100 Overbrook Drive, Shavertown, Pennsylvania].

4. On February 8, 2011, [] Ah! Some Chocolates entered into a lease for a separate portion of the premises [with] [] Costello, operating under the name "Brown Barn Café." …

5. The lease provided [Costello] with full use of the café portion of the premises, the parking lot and the outside yard area for use as a café.

6. Paragraph 22 of the original lease states: "On execution of this Lease, The Tenant [Costello] will pay the Landlord [Ah! Some Chocolates] a security deposit equal to the amount of $1,500.00 (the "Security Deposit") to be held by the Landlord without interest. The Landlord will return the Security Deposit to the Tenant at the end of his tenancy, less such deductions as provided in this Lease but no deduction will be made for damage due to reasonable wear and tear." …

7. At the time of the entry of the lease, [Costello] did in fact pay Defendants [$1,500.00] as [a] security deposit.

8. On May 1, 2011, an Addendum to the original lease was entered [into] between Defendants and [Costello]. …

9. According to the Addendum, the rental amount was increased by [$1,250.00], from $1[,]500.00 per month to $2[,]750.00 per month. The reason for the increase was to cover Defendants' expenses related to [Costello's] expansion of hours of operation and food service, resulting from [Costello's] addition of dinner service three nights per week.

10. Paragraph 3 of the Addendum states: "The base rent will increase by [$1,250.00] to [$2,750.00] monthly[,] payable on the 1st of the month beginning June 1, 2011. The base rent will remain the same for any other expansion of hours of operation with the exception of one caveat. After review of gas and electric usage, Ah! Some Chocolates retains the right to ask for an increase in rent to cover any overages in utility usage that exceed what is covered in the base rent. To help avoid increases in rent, Ah! Some Chocolates asks the tenant be mindful and proactive in reducing unnecessary and/or wasteful utility usage." …

11. At the time the Addendum to the lease was entered, [Costello] paid Defendants and [*sic*] additional $1[,]250.00 as [a] security deposit, for a total security deposit being held by Defendants of $2[,]750.00.

12. On [March 1, 2012, Costello] and Defendant[s] entered into a Lease Renewal & Amendment to Commercial Lease Agreement, renewing the lease for an additional two years. … [The Lease Renewal incorporated Paragraph 3 of the Addendum.]

….

14. At no time during the course of the lease did Defendants ever give notice of excessive utility usage, nor did they ever seek additional monthly rental payments based on utility usage or for any other reason.

15. In November, 2013, [Costello] sought to negotiate a decrease in rent with [] Novak and Hepner; such negotiations were unsuccessful.

16. In January, 2014, [Costello] notified Defendants that he intended to vacate the premises at the end of the lease term.

Complaint, 11/12/14, ¶¶ 3-16.

The Brown Barn Café ceased operations after the close of business on February 15, 2014. ***Id.***, ¶ 18. Costello completed two walk-throughs with Hepner at the end of that month, and he was notified of a grease stain on a piece of drywall. ***Id.***, ¶¶ 21-25.

26. Following the second walk-through, and immediately prior to [Costello's] surrender of the premises, [] Hepner placed on the counter what purported to be a bill for half of all utilities for the preceding two years. …

27. At no time prior to that date did Defendants ever make any demand to [Costello] for payment of any portion of the utilities.

28. At no time did Defendants ever submit to [Costello] copies of any utility bills.

29. Following surrender of the property, on [March 2, 2014], a demand was made on behalf of [Costello], through counsel, for the return of the security deposit in the amount of $2[,]750.00. …

30. In response to that demand, on [March 24, 2014], Defendants e-mailed [Costello's] counsel, abandoning the claim for payment of utility bills, but stating that the security deposit was being withheld due to alleged damages to the property, which were not specified in the email. …

31. On [March 25, 2014, Costello], through counsel, made a second demand for return of the security deposit. …

32. Defendants failed to respond to the second demand.

33. On [April 9, 2014, Costello] made a third and final demand for return of the security deposit. …

34. In response to the final demand, on April 29, 2014, [] Hepner sent the following e-mail message to [Costello's] counsel: "I am sending you paperwork outlining our position complete with supporting documentation—they should arrive this week." …

35. No such paperwork outlining Defendants' position nor supporting documentation was ever submitted … by Defendants, either personally or through counsel.

*Id.*, ¶¶ 26-35.

Additionally, Costello set forth the following:

41. Prior to entry into the initial lease with [Costello], Defendants were operating a café on the premises … under the name "The Café at Ah! Some Chocolates."

42. [] Costello named his business "The Brown Barn Café," filed all necessary forms to pay taxes, purchase insurance, and operate under the name "The Brown Barn Café," and did, in fact, legally operate under that trade name.

43. Defendants entered a lease agreement with [Costello] that expressly states "Operating name of John Costello:  Brown Barn Café." …

….

50. During the course of the three[-]year lease, the income of the Brown Barn Café increased steadily, due in part to the purchased advertising and in part to the goodwill built by [Costello].

[Costello negotiated a three-month lease at another location, and again used the name "The Brown Barn Café."]

53. Prior to [Costello] relocating his business, [] Hepner specifically asked [Costello] not to take his operating name "The Brown Barn Café" to his new location.

….

54. In April, 2014, [Costello] became aware that Defendants reopened the café on the premises … under the name "The Brown Barn Bistro."

*Id.*, ¶¶ 41-54.   The Complaint alleged claims for the return of Costello's security deposit, trade name infringement, and business disparagement, and a request for a permanent injunction.[3]

On December 30, 2014, Defendants filed Preliminary Objections in the nature of a demurrer regarding Costello's claims for trade name infringement and a permanent injunction.  Additionally, Defendants argued that Costello had changed the party names in the caption when he appealed to the Court

_____

[3] On November 13, 2014, Defendants filed a Complaint against Costello, alleging breach of contract, unjust enrichment, and negligence.  **See** Complaint, 11/13/14.   The two actions were consolidated.   Ultimately, Defendants withdrew their claims prior to the start of trial.

of Common Pleas, without first seeking permission to do so. Costello filed a Response. On June 16, 2015, the trial court denied and dismissed Defendants' Preliminary Objections, and directed them to file a response to the Complaint.

Defendants filed a Response and New Matter on July 24, 2015. Costello subsequently filed a Response to Defendants' New Matter.

On January 11, 2016, Costello filed a Motion for placement of a pre-judgment lien on Defendants' property. Specifically, Costello alleged that The Brown Barn Bistro had been closed permanently; Ah! Some Chocolates was open on a limited basis; and the property had been listed for sale. Costello stated his belief that Defendants intend to dispose of their assets or file for bankruptcy, which would inhibit his ability to collect a judgment.

The parties engaged in discovery. Relevantly, Costello sent the Defendants Interrogatories and Request for Production of Documents.[4] On January 15, 2016, Costello filed a Motion to Compel, claiming that he never received a response to the Interrogatories and Request for Production of Documents, and reiterating his concerns that Defendants would dispose of assets or file for bankruptcy. By and Order entered on February 5, 2016, the trial court granted Costello's Motion to Compel.

---

[4] Relevantly, Costello requested information concerning the profits or losses of Ah! Some Chocolates and all businesses operating under the name "Brown Barn." **See** Motion to Compel, 1/15/16, Exhibit B (Plaintiff's First Set of Interrogatories and Request for Production of Documents), ¶ 9.

The Defendants filed a Motion to Reconsider, and a brief in support thereof, alleging that they had responded to the Interrogatories and Request for Production of Documents, "absent information relating to their financial wealth." Motion to Reconsider, 3/4/16, at ¶ 7; **see also id.**, ¶¶ 10-12 (arguing that Costello failed to seek leave of court to request such information, as required by Pa.R.Civ.P. 4003.7). Costello filed a Response and a supporting brief.

On March 28, 2016, Costello filed a Motion for Sanctions, based upon Defendants' failure to comply with the court's Order granting Costello's Motion to Compel. The trial court issued a Rule Returnable on the same date, directing Defendants to show cause why Costello's Motion for Sanctions should not be granted. Defendants subsequently filed a Response. By an Order entered on September 14, 2016, the trial court denied Costello's Motion for Sanctions. Additionally, the trial court directed Defendants to provide the information requested in Interrogatory 9(a) in the First Set of Interrogatories (relating to federal and state income tax returns filed by Ah! Some Chocolates and/or entities operating under the name "Brown Barn"), but stated that Defendants were not required to provide the information requested in Interrogatories 2, 7, and 9(b).

The trial court summarized what next transpired as follows:

[O]n August 29, 2017, [Costello] filed his Certificate for Arbitration indicating that the amount in controversy was $50,000.00 or less and the case was ripe to be heard by a board of arbitrators. After multiple continuances, an arbitration hearing

commenced on January 4, 2019. The arbitration panel concluded that [Defendants] violated the lease by failing to return [Costello's] security deposit and awarded him $2,750.00 in damages, but denied his request for attorney's fees. The panel found in favor of [Defendants] on the counts for trade name infringement and business disparagement.

[Costello] filed a Notice of Appeal from the award of arbitrators on January 30, 2018[,] and requested a jury trial. On April 30, 2018, [Costello] filed a Petition for Leave to File an Amended Complaint, seeking to withdraw his claim for injunctive relief and to pursue damages in excess of $50,000[.00]. The basis for [Costello's] request to withdraw his claim for injunctive relief was that [Defendants'] business had failed and they were no longer operating under the name "Brown Barn." Also, the Petition stated that, following the [a]rbitration, [Costello] decided to pursue his initial claim for punitive damages and retained an expert[,] who opined that [Costello's] loss of good will and reputation exceeded damages in the amount of $50,000[.00]. [Defendants] filed their [R]esponse to [Costello's] Petition on May 8, 2018. By Order dated May 11, 2018, the [c]ourt granted [Costello's] Petition to File an Amended Complaint. [Costello] filed his Amended Complaint, reflecting the changes set forth in his Petition, on June 12, 2018. The Amended Complaint included a cause of action for breach of contract related to the lease between [Costello] and [] Ah! Some Chocolates [] and claims for trade name infringement and business disparagement.

Prior to trial, the parties filed multiple [M]otions *in limine* seeking advance rulings by the [c]ourt. Relevant to the current matter, [Costello] filed a Motion to Pierce the Corporate Veil and [a] Motion to Preclude the Report and Testimony of [Defendants'] expert, Andrew Verzilli[, MBA ("Verzilli")], while [Defendants] filed a Motion to Preclude the Testimony of [Costello's] expert, Shawn Dolan [("Dolan")]. The parties later filed responses to the relevant [M]otions.

On March 28, 2019, the [c]ourt entered an Order finding that [Costello's] Motion to Pierce the Corporate Veil was moot because the breach of contract action against the individual

[Defendants] was previously dismissed orally on the record.[5] The [c]ourt's prior dismissal of the individual [Defendants] was based on the fact that the lease between the parties was executed by [] Ah! Some Chocolates [] only. The first time that [Costello] raised a theory that the corporate veil of [] Ah! Some Chocolates [] could be pierced, allowing a breach of contract action against the individual [Defendants] was in his [M]otion *in limine*, after the individual [Defendants] had already been dismissed.

Immediately before trial, the [c]ourt made oral rulings on the [M]otions *in limine* regarding each party's expert. The [c]ourt first ruled that [Defendants'] expert, [] Verzilli, could testify to the items within his expert report. Next, the [c]ourt concluded that [Costello's] expert, [] Dolan, was permitted to testify to monetary projections based on his knowledge of the restaurant industry, but that he was not qualified to discuss economic models. Following these rulings, on April 2, 2019, trial commenced in this matter.

On April 4, 2019, the jury rendered its verdict, finding that [] Ah! Some Chocolates [] infringed [on] the trade name, "The Brown Barn Café," but awarding zero dollars in damages. The jury also found that [] Ah! Some Chocolates [] breached its lease with [Costello]. As a result, the jury awarded [Costello] $2,750[.00,] plus court costs.

On April 16, 2019, [Costello] filed his Post Trial Motion seeking a new trial and an order to pierce the corporate veil of [] Ah! Some Chocolates []. Relevant to this [a]ppeal, [Costello] argued in his Post Trial Motion that the [c]ourt erred in denying its Motion in [*l*]*imine* to Pierce the Corporate Veil, permitting [Defendants'] expert [] Verzilli to testify because he provided no basis for his conclusions, and limiting the testimony of [Costello's] expert, [] Dolan. [Defendants] filed their Response to the Post

_____

[5] Defendants had filed a Motion for Partial Summary Judgment on March 8, 2018, alleging that, despite appealing from the arbitration award, Costello had failed to file a certificate of trial readiness. Defendants sought dismissal of the counts of trade name infringement and business disparagement, and requested that any potential recovery be limited against Ah! Some Chocolates. Following oral argument on the matter, the trial court denied Defendants' Motion for Partial Summary Judgment on November 28, 2018.

Trial Motion and brief on May 28, 2019. By Order dated June 19, 2019, the [c]ourt denied [Costello's] Post Trial Motion. …

Trial Court Opinion, 12/26/19, at 2-6 (citations and footnotes omitted; footnote added).

Costello filed a Notice of Appeal[6] and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

Costello now raises the following issues for our review:

I. Did the trial court err in limiting [Costello's] [e]xpert's testimony to "the restaurant's value from the perspective of a basic business approach[,]" rather than permitting him to testify to the damage calculations he had made based on a published formula for determining the value of a not-yet-profitable business?

II. Did the trial court err in permitting the testimony and report of Defendants' [e]xpert, [] Verzilli[, ] where [] Verzilli's report failed to cite any basis whatsoever to support his conclusion that [Costello's] business had no value and, therefore, [Costello] was entitled to no damages for trade[ ]name infringement?

III. Did the trial court err in denying [Costello's] Motion to Pierce the Corporate Veil as moot, based on the court's observation during oral argument earlier in the case that, because the lease agreement was entered between [Costello] and [Ah! Some

_____

[6] Costello purports to appeal from the trial court's June 19, 2019, Order denying his Post Trial Motion. However, "an appeal in a civil case in which post-trial motions are filed lies from the entry of judgment." **Billig v. Skvarla**, 853 A.2d 1042, 1048 (Pa. Super. 2004) (citation omitted). Because judgment had not been entered on the docket when Costello filed his Notice of Appeal, this Court entered an Order on August 9, 2019, directing Costello to praecipe the trial court for entry of final judgment. Costello complied, and responded to this Court's Order with a copy of the trial court docket, indicating that Judgment was entered on August 13, 2019. Thus, the appeal is properly before this Court. **See** Pa.R.A.P. 905(a)(5) (stating that "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

Chocolates,] and not the [i]ndividual Defendants, the [i]ndividual Defendants were not parties to that action[?]

Brief for Appellant at 4.

We observe the following standard of review:

We will reverse a trial court's decision to deny a motion for a new trial only if the trial court abused its discretion. We must review the court's alleged mistake and determine whether the court erred and, if so, whether the error resulted in prejudice necessitating a new trial. If the alleged mistake concerned an error of law, we will scrutinize for legal error. Once we determine whether an error occurred, we must then determine whether the trial court abused its discretion in ruling on the request for a new trial. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will.

*Underwood ex rel. Underwood v. Wind*, 854 A.2d 1199, 1206 (Pa. Super. 2008) (citation omitted).

Further,

[a] motion *in limine* is a procedure for obtaining a ruling on the admissibility of evidence prior to or during trial, but before the evidence has been offered. When reviewing rulings on motions *in limine*, we apply the scope of review appropriate to the particular evidentiary matter. The admissibility of evidence is a matter addressed to the sound discretion of the trial court and should not be overturned absent an abuse of discretion.

*Educ. Res. Inst., Inc. v. Cole*, 827 A.2d 493, 499 (Pa. Super. 2003) (citation omitted).

In his first claim, Costello contends that the trial court erred in limiting the testimony of his expert, Dolan. Brief for Appellant at 14. Costello argues that Defendants did not challenge Dolan's credentials. *Id.* at 16. According

to Costello, the method for appraising the value of a not-yet-profitable business preferred by Dolan, did not require a projection of lost profits. ***Id.*** at 15; ***see also id.*** (stating that this is the most conservative and certain method for calculating damages). Costello claims that Dolan's report was based on "the concrete and abundantly[-]substantiated investment [Costello] had already made in his business before Defendants engaged in their tortious acts." ***Id.*** at 17. Costello asserts that the trial court improperly ruled that Dolan was not qualified to discuss the models for appraising the value of not-yet-profitable businesses. ***Id.*** According to Costello, Dolan's testimony was unclear because he was not permitted to testify regarding damages. ***Id.*** at 17-18. Costello contends that, although Dolan does not hold an advanced degree in economics, his education and practical experience is sufficient to qualify him as an expert, and that Dolan should have been permitted to explain his valuation of the business. ***Id.*** at 19. Costello claims that Dolan's inability to testify regarding the valuation of Costello's business resulted in the jury award of no damages for his trade name infringement claim. ***Id.*** at 19.

> Whether a witness has been properly qualified to give expert witness testimony is vested in the discretion of the trial court. Pennsylvania's standard for qualifying a witness as an expert is rather liberal—if the witness possesses knowledge with regard to subject matter that is beyond the knowledge, information, or skill possessed by the ordinary juror, he or she may testify.

***W. Phila. Therapy Ctr. v. Erie Ins. Grp.***, 751 A.2d 1166, 1167-68 (Pa. Super. 2000) (citations omitted). Additionally,

- 12 -

[t]he test to be applied when qualifying a witness to testify as an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. If a witness possesses neither experience nor education in the subject matter under investigation, the witness should be found not to qualify as an expert.

*Jacobs v. Chatwani*, 922 A.2d 950, 959 (Pa. Super. 2007) (citation and

paragraph break omitted).

In its Opinion, the trial court addressed this claim as follows:

At trial, [] Dolan was offered and admitted as an expert in the field of restaurant management and operations. As part of his qualification, counsel for [Costello] was instructed that the expert could provide his own analysis and opinion about the restaurant's value from the perspective of a basic business approach, but he could not determine a value based on a forensic economic analysis. While Dolan was obviously an expert in restaurant management, he lacked the qualifications of an economic expert.

In his report, Dolan based the majority of his opinions on his training and experience in the restaurant business; however, he also attempted to apply an article titled, "Appraising the Profits Lost by a Failed New Venture" published in the *Journal of Forensic Economics*. Not only did Dolan cite to this article, but he explained three economic business valuation theories and chose the model he felt was most appropriate for the current situation. Dolan's curriculum vitae ("CV") reflects that he has an associate's degree in occupational studies in culinary arts, and a recent bachelor of science degree in business administration and law from Western Carolina University. His work experience started in various capacities as a chef and eventually transitioned into restaurant management and consultation. There is simply nothing in Dolan's CV that indicates any pretense to specialized knowledge in economics.[FN] At trial, Dolan testified that he previously conducted one valuation of a restaurant for sale; there is no indication that the valuation was from the perspective of an economist rather than from that of an expert in the restaurant business. Accordingly, Dolan was precluded from taking a forensic economic approach to his analysis[,] and counsel for [Costello] was free to ask him any questions related to the value of the Brown Barn Café from a business perspective.

---

[FN] Although Dolan's CV indicates that he holds a bachelor's degree in business administration and law, [Costello] never argued that such degree involved specialized economic[s] training. In fact, [Costello] never even mentioned during arguments on the [M]otions *in limine*, or the trial, that Dolan held such a degree.

---

Trial Court Opinion, 12/26/19, at 18-20 (footnote in original). [7]

Upon review, we discern no abuse of discretion by the trial court. There is no evidence of record to establish that Dolan possesses specialized knowledge or skill in the subject of forensic economics. **See Jacobs**, **supra**. Despite Dolan's extensive experience working in restaurants, the evidence does not establish that Dolan has specialized experience, education or expertise in valuing not-yet-profitable restaurants. **See id.** Thus, the trial court did not abuse its discretion or commit an error of law in limiting Dolan's testimony to monetary projections based on his restaurant experience.

In his second claim, Costello argues that the trial court erred in permitting the expert testimony and report of Verzilli, because Verzilli's report did not cite the basis of his conclusions. Brief for Appellant at 20. According

---

[7] On August 5, 2019, Costello filed an Application for Relief with this Court, asking to be excused from including a copy of the trial court transcript. This Court granted Costello's Application for Relief. "Accordingly, any references to the oral record in this case are from the [trial c]ourt's recollection and trial notes." Trial Court Opinion, 12/26/19, at 5 n.3. Similarly, we are unable to review any discussion of the Motions *in limine* that may have occurred on the record prior to the start of trial; our review is limited to the evidence of record and the trial court's recollections, as set forth in its Opinion.

to Costello, Verzilli opined that Dolan's conclusions were flawed, speculative, and inconsistent with Pennsylvania damage guidelines, but did not sufficiently explain his opinions. *Id.*; *see also id.* (claiming that Verzilli's "cursory dismissal of [Costello's] damage claims is unsupported by Pennsylvania law."). Costello challenges several of Verzilli's opinions that the model applied by Dolan was "flawed and speculative;" Costello's expenditures on advertising, coupons and discounts were not investments; and Costello's labor and lost earning capacity could not be considered in calculating damages, nor could they be estimated without speculation. *Id.* at 20-22. Costello claims that "Verzilli's expert report was so vague and conclusory that [Costello] was given no notice at all of the intended scope of his trial testimony." *Id.* at 23. Costello argues that because Verzilli failed to include relevant authorities in his expert report, his opinion "must be viewed as nothing more than his mere personal belief." *Id.* Additionally Costello asserts that prejudice is evident from the fact that the jury's determination that Ah! Some Chocolates infringed Costello's trade name, but that Costello suffered no resulting damages. *Id.* at 23-24.

> It is well settled that expert testimony is incompetent if it lacks an adequate basis in fact. The expert is allowed only to assume the truth of testimony already in evidence. While an expert's opinion need not be based on an absolute certainty, an opinion based on mere possibilities is not competent evidence. This means that expert testimony cannot be based solely upon conjecture or surmise. An expert must do more than guess. His … assumptions must be based upon such facts as the jury would be warranted in finding from the evidence.

***Nazarak v. Waite***, 216 A.3d 1093, 1111 (Pa. Super. 2019) (citations

omitted). Concerning the appropriate basis of an expert's opinion,

Pennsylvania Rule of Evidence 703 provides as follows:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kind of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Pa.R.E. 703.

The trial court addressed Costello's claim as follows:

[Costello's] argument regarding the alleged lack of basis for Verzilli's opinion disregards both the Commonwealth's standards for the basis of expert opinions … and the substantial number of facts upon which Verzilli based his opinion. In the first paragraph of his report, Verzilli outlined the documentary evidence he reviewed to aid him in reaching his ultimate conclusion. Specifically, Verzilli considered … Dolan's[] report, [Costello's] W-2 forms for the periods of time both prior to and following the operation of the business, and the income statements for the Brown Barn Café from 2013-2015. Applying his knowledge of economics to the facts, Verzilli reached the following conclusions relevant to this appeal:

> In this instance, The Brown Barn Café had accumulated net losses of over $36,000 from April, 2011 through December, 2013 (2.75 years). This business clearly never showed a profit and it would be speculative to conclude that it had value and would have been profitable…. In addition, the business actually had negative cash flow and the fair market value based on an income approach would result in a negative value. (Verzilli 10/3/18 Report, p. 2-3.)

At trial, Verzilli was admitted as an expert in economics and finance, and rendered all of his opinions to a reasonable degree of economic certainty. Verzilli testified, consistent with his report, that revenue was stagnant and the business never showed a profit, thus, it had no value. Also, Verzilli explained that a value

of good will of a business may only be considered where there is a positive net worth. As the business was operating at a loss, good will was not a proper consideration for any valuation.

Like the expert in **Helpin** [**v. Trs. of Univ. of Pa.**, 969 A.2d 601 (Pa. Super. 2009)[8]], Verzilli provided an adequate factual basis for his opinion based on his review of [Costello's] earnings through his W-2s and the business's financial status, as reflected in his income spreadsheets. Nothing about Verzilli's conclusions were based on speculation[;] rather[,] they were formed after the review of appropriate financial documentation, consistent with the Pennsylvania Rules of Evidence and case[ ]law.

… Verzilli rendered an economic, not medical, opinion on damages…. [Verzilli] applied facts, as required by Rule 703 … and as explained in **Helpin**, to specialized knowledge in reaching his conclusions to a reasonable degree of economic certainty. As there has been no challenge to his qualifications or specialized knowledge[,] and his opinions were adequately based in fact, the [c]ourt did not err by permitting Verzilli to testify.

Trial Court Opinion, 12/26/19, at 13-16 (some citations omitted; footnote added).

Our review confirms that Verzilli's expert opinion, as set forth in his report, had an adequate basis in fact. In his report, Verzilli stated that he reviewed Dolan's report, as well as Costello's W-2 forms and income

---

[8] In **Helpin**, this Court considered a breach of contract claim arising from the removal of the director of a pediatric dental clinic. **See Helpin**, 969 A.2d at 605. The defendants-employers argued, *inter alia*, that the plaintiff's expert had based his opinion on the plaintiff's "dreams" for the clinic, and this opinion was not adequately supported by facts. **See id.** at 616. Therefore, the defendants-employers claimed that the expert's opinion was speculative and inadmissible. **See id.** On appeal, this Court concluded that the expert's opinion was "grounded in a substantial amount of documentary evidence as well as the testimony of [the plaintiff's] witnesses…." **Id.**; **see also id.** (detailing evidence such as an offer of employment, salary letters, monthly statements from the clinic, a schedule of new operations, *etc.*).

- 17 -

statements for The Brown Barn Café. **See** Motion *in Limine* to Preclude the Report and Testimony of Verzilli, 3/15/19, Exhibit B (Verzilli's Report), at 1 (unnumbered). Verzilli then applied his knowledge of economics in evaluating the opinions set forth in Dolan's expert report. **See id.** at 2-3 (unnumbered). As we discern no abuse of the trial court's discretion in permitting Verzilli to testify at trial, we cannot grant Costello relief on this claim.

In his third claim, Costello avers that the trial court erred in denying his Motion to Pierce the Corporate Veil as moot. Brief for Appellant at 24. Costello refers to arguments that Defendants made in their Motion for Partial Summary Judgment concerning their personal liability. **See id.** at 24-25. However, Costello argues that the trial court's ruling was limited to the Motion for Partial Summary Judgment, and that the trial court did not formally dismiss the individual Defendants from the breach of contract claim. **Id.** at 25. Costello therefore asserts that the Motion was not moot, and there were no grounds for determining that he had waived any arguments on the issue. **Id.** at 26. Costello then proceeds to argue the merits of his claim that Hepner and Novak are individually liable for the debts and judgments against Ah! Some Chocolates. **See id.** at 27-32.

Costello has failed to include any citation to or discussion of relevant legal authority in support of his contention that his Motion to Pierce the Corporate Veil was not moot. **See** Pa.R.A.P. 2119(a) (stating that the argument shall include "such discussion and citation of authorities as are

- 18 -

deemed pertinent."). Costello also failed to adequately develop his argument that Hepner and Novak are individually liable for any judgments entered against Ah! Some Chocolates with citation to and discussion of legal authorities. ***See id.*** Accordingly, Costello's final claim is waived.[9] ***See Commonwealth v. Johnson***, 985 A.2d 915, 924 (Pa. 2009) (stating that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

Judgment affirmed.

---

[9] We acknowledge that the record does not include a separate order dismissing the breach of contract action against the individual Defendants. Because there are no transcripts included in the certified record, we are unable to review the arguments and ruling made during the hearing on Defendant's Motion for Partial Summary Judgment. However, in its March 28, 2019, Order deeming Costello's Motion to Pierce the Corporate Veil moot, the trial court stated that, during the hearing, it had ruled that the breach of contract action was proper only against Ah! Some Chocolates, and not the individual Defendants. As the trial court noted in its Opinion, "Costello never asked the [c]ourt to reconsider this ruling, nor sought to amend the Amended Complaint to add a breach of contract claim against the individual [D]efendants under the theory that the corporate form afforded them no protection." Trial Court Opinion, 12/26/19, at 20-21; ***see also id.*** at 21 (stating that "[C]ostello has never stated a claim for which relief may be granted against the individual [Defendants] for breach of contract.").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/22/2020</u>