J-A06022-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| NICHOLAS GALLI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT SATALOFF, M.D., ROBERT | : | No. 583 EDA 2024 |
| SATALOFF, M.D. AND ASSOCIATES, | : | |
| VINCENT ODENIGBO, M.D., AND | : | |
| DREXEL UNIVERSITY | : | |

Appeal from the Judgment Entered January 30, 2024
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 201102018

BEFORE: PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.: **FILED SEPTEMBER 10, 2025**

In this medical malpractice case, Nicholas Galli appeals from the entry of judgment on the jury verdict in favor of Vincent Odenigbo, M.D. Galli claims the trial court committed numerous errors. Notably, Galli argues that he was unable to adequately rebut defense expert testimony that went outside of the fair scope of the expert report, in violation of Pennsylvania Rule of Civil Procedure 4003.5(c). After careful consideration, we affirm.

Galli frequently got papillomas in his airway and had 19 previous procedures to remove them. For close to 20 years, over half of the operations were performed by his otolaryngologist (i.e., ear, nose and throat doctor), Robert Sataloff, M.D. On November 26, 2018, Galli saw Dr. Sataloff at

_____

[*] Former Justice specially assigned to the Superior Court.

Hahnemann Hospital to remove papillomas from his subglottis. Dr. Odenigbo, was the anesthesiologist for the procedure. This was the first time Dr. Odenigbo treated Galli. There was no dispute among the parties regarding the pre-operation and surgical procedures.

The pre-operation intubation was performed by the anesthesia resident Irum Khan, M.D., under the supervision of Dr. Odenigbo. This intubation was performed with an endotracheal tube ("ETT") advanced into Galli's airway with a metal stylet and under direct visualization with a solid curved "McGrath" laryngoscope.[1] The pre-operation intubation was completed without incident.

Dr. Sataloff performed the papilloma removal procedure. He used a special hollow straight laryngoscope (that he invented) and passed a micro shaver through the hollow lumen of the laryngoscope to shave the papilloma. He could not visualize the papilloma with the ETT in place. Thus, Dr. Sataloff performed the procedure apneic, meaning Galli's ETT was removed and Dr.

_____

[1] Resolving the issues in this case requires a brief understanding of the intubation process. We commend the parties for educating the Court with materials to accomplish this endeavor. Intubation involves the insertion of a flexible plastic ETT into a patient's airway to allow the passage of air. A laryngoscope is frequently used to help the provider visualize the larynx and guide the ETT through the airway. A laryngoscope is "an instrument rather like a large tongue depressor on a handle, which allows the physician a direct view of the glottis[.]" 4 Attorneys Medical Advisor § 33:26. A stylet is sometimes used to help guide the ETT through the patient's airway. A stylet is either a rigid or malleable metal rod that is inserted into the ETT to stiffen the ETT and facilitate greater control. ***See*** Stephanie C. DeMasi, et al., *Evidence-based Emergency Tracheal Intubation*, 211(7) Am. J. Respir. Crit. Care Med. 1156, 1160 (2025). Once the ETT is in place the stylet is removed from the ETT.

Sataloff periodically reintubated Galli when his oxygen levels dropped below a certain level. Dr. Sataloff reintubated Galli numerous times by inserting the ETT through the inside hollow lumen of his laryngoscope without using a metal stylet. Dr. Sataloff successfully removed the papilloma and did not observe any injury to Galli's airway during the procedure.

Dr. Odenigbo monitored Galli after the procedure. As explained in further detail below, the parties disputed the post-operation proceedings. Initially, the dispute centered around whether Dr. Odenigbo used a metal stylet when he performed a post-operation reintubation. However, later at trial Dr. Odenigbo testified that he never reintubated Galli after the procedure.

The following day, Galli returned to the hospital and was admitted due to discomfort in his throat when breathing and swallowing. It was discovered that Galli had an opening in his posterior tracheal wall. Galli remained at the hospital for nearly three weeks during which he had to be fed with a Dobhoff tube. After he was discharged, he needed a stomach feeding tube for nearly four months. Even after the feeding tube was removed, Galli still had difficulty swallowing and could only eat soft foods. Galli was weak and lost weight; he was able to return to work and travel but resumed only limited pre-injury activities.

On November 23, 2020, Galli commenced a civil action against Dr. Sataloff, Robert Sataloff, M.D. & Associates, and Dr. Odenigbo. On May 13, 2021, a judgment of non pros was entered against Galli as to all claims against

Dr. Sataloff and Robert Sataloff, M.D. & Associates. The parties engaged in pretrial discovery and took depositions.

At his deposition, although he could not recall the specifics of the surgery and the post-operation care, Dr. Odenigbo testified that he performed an intubation at the end of the procedure and did not cause an injury to Galli. **See** Depo., 8/30/22, at 84-86, 101-02, 106, 129-30. Dr. Sataloff was deposed a few months later. He testified that he performed the final intubation, not Dr. Odenigbo. **See** Depo., 11/8/22, at 49-50.

Next, the parties each produced two expert reports in support of their position. Galli's two expert reports were prepared by Alan David Kaye, M.D., Ph.D., an anesthesiologist, and David Greene, M.D., an otolaryngologist. Dr. Kaye and Dr. Greene's reports stated that Galli's airway injury was caused by the post-operation intubation performed by Dr. Odenigbo. Additionally, Dr. Kaye opined that the airway injury was likely caused by a metal stylet that went beyond the tip of the ETT.

Dr. Odenigbo's two expert reports were prepared by Mark Etter, M.D., an anesthesiologist, and Bert O'Malley, Jr., M.D., an otolaryngologist. Dr. Etter opined that Dr. Odenigbo reintubated Galli prior to the end of the procedure but the assertion that he used a stylet that extended past the ETT was completely speculative. Instead, Dr. Etter opined that Dr. Odenigbo's reintubation could not have caused the injury because Dr. Odenigbo reintubated Galli by inserting the ETT inside an already in place rigid laryngoscope. Dr. O'Malley opined that Dr. Odenigbo did the initial pre-

- 4 -

operation intubation and final extubation. Further, he opined that Galli's airway injury could have been caused by a preexisting fistula from one of Galli's numerous other procedures or due to Dr. Sataloff's procedure. A few weeks before trial commenced, each expert issued a supplemental expert report responding to the opposing expert reports and reiterating their initial conclusions.

Trial commenced on July 10, 2023. At the outset the trial court heard argument on Galli's outstanding motion in limine regarding Dr. O'Malley's testimony. *See* N.T., 7/10/23, at 9-20. Galli sought to preclude Dr. O'Malley from testifying about the standard of care for anesthesiologists and that Dr. Odenigbo complied with the standard of care. Galli argued that Dr. O'Malley was unqualified because he was not an anesthesiologist and that such testimony would be cumulative. *See id.* The trial court denied the motion. *Id.* at 19-20; N.T., 7/11/23, at 42-46.

Galli presented the following witnesses in order: his wife; a damages expert; Dr. Kaye; Dr. Odenigbo as on cross-examination; Dr. Greene; and himself. After Dr. Greene testified, the trial court, over Galli's objection, permitted Dr. Odenigbo to call Dr. Etter out of order and while they were still on Galli's side of the case. *See* N.T., 7/12/23, at 157-58. After Galli's case in chief, Dr. Odenigbo's only remaining live witness was Dr. O'Malley.[2]

_____

[2] Dr. Sataloff did not testify at trial but video of his deposition testimony was played for the jury. *See* N.T., 7/13/23, at 149-50.

Relevant to this appeal, Galli objected to portions of Dr. Etter and Dr. O'Malley's testimony. Galli sought to preclude, and later moved to strike, Dr. Etter's testimony regarding the reasonableness of a post-operation reintubation and the absence of evidence for such a reintubation as outside the scope of his expert report in violation of Rule 4003.5(c). *See* N.T., 7/11/23, at 255-67; N.T., 7/12/23, at 152-56; N.T., 7/13/23, at 7-26. Additionally, Galli moved to preclude Dr. O'Malley from testifying about whether Dr. Odenigbo acted within the standard of care for the second intubation as outside the scope of his expert report. *See* N.T., 7/13/23, at 72-88. The trial court denied Galli's motions. *See id.* at 89-97.

At the conclusion of the third day of trial, the trial court held an off-the-record conference regarding proposed jury instructions. *See* N.T., 7/12/23, at 229-231. During a brief break the following day, the trial court mentioned that it was still undecided on whether to give Galli's requested res ipsa loquitur instruction and Dr. Odenigbo's requested "mere occurrence" instruction. *See* N.T., 7/13/23, at 99-100. At the conclusion of that day of trial the trial court held another off-the-record conference regarding jury instructions. *See id.* at 170-71.

At the start of the last day of trial, the trial court discussed the jury instructions it would give based on what was discussed off the record. *See* N.T., 7/14/23 at 5-20. Specifically, the trial court explained that it would give both Galli's res ipsa loquitur charge and Dr. Odenigbo's requested "mere occurrence" charge. *See id.* at 15-16. Regarding res ipsa loquitur the trial

court explained that "the instruction should still be given even if there's other possible reasons why an injury could have occurred." *Id.* at 16. Prior to instructing the jury the parties indicated that they were satisfied with the proposed instructions that would be given to the jury. *See id.* at 100-01. The trial court proceeded to instruct the jury, including the res ipsa loquitur and mere occurrence instructions. *See id.* at 126-27. Galli did not object to the mere occurrence charge during the on the record discussions or when the jury was charged.

On July 14, 2023, the jury rendered a verdict in Dr. Odenigbo's favor. Galli filed a timely post-trial motion which was denied by operation of law on November 21, 2023. On January 30, 2024, Dr. Odenigbo filed a praecipe for entry of judgment on the verdict. Galli timely appealed. Galli filed a court ordered concise statement of matters complained of on appeal and the trial court filed an opinion. *See* Pa.R.A.P. 1925(a)-(b).

Galli raises the following issues for our review.

1. The trial court erred by permitting, over objections, both defense experts to testify to an entirely new defense, which was outside the scope of their reports, and in fact was wholly contradictory to the existing discovery record in which defendant Dr. Odenigbo testified (and introduced into evidence at trial) more than a dozen times that he performed the final intubation.

2. The trial court erred when it permitted defense expert Bert O'Malley M.D., an otolaryngologist, to testify as to the standard of care applicable to [Dr. Odenigbo], an anesthesiologist for which he was not qualified and further was cumulative of the testimony of [] another defense liability expert's testimony.

- 7 -

3. The trial court erred when it gave an inapplicable and erroneous jury instruction that "the mere occurrence of an injury does not prove negligence."

4. The trial court erred when it permitted the defense, over objection, to call their liability expert to testify during Plaintiff's case in chief.

Concise Statement of Matters Complained of on Appeal, ¶¶ 1-2, 4-5 (renumbered; reordered).[3]

The issues raised by Galli primarily concern the admission of evidence. "The admission or exclusion of evidence is within the sound discretion of the trial court. In reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law." *Nazarak v. Waite*, 216 A.3d 1093, 1100 (Pa. Super. 2019) (brackets and citation omitted).

> An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such a lack of support as to be clearly erroneous. In addition, to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Id.* (citation omitted).

In his first issue, Galli argues that the trial court erred in overruling his objection to Dr. Etter's testimony as being outside the scope of his report that Dr. Odenigbo did not perform a post-operation reintubation and the reason,

---

[3] Galli raised twelve issues in his concise statement. However, the issues stated are the only issues he argues in his brief.

in his opinion, why reintubation following surgery would have been unnecessary.[4] **See** Appellant's Brief, at 19-27; Reply Brief, at 6, 10-15. Dr. Odenigbo argues that Dr. Etter never offered a definitive opinion at trial regarding which doctor performed the final intubation but rather merely acknowledged Dr. Sataloff's previous deposition testimony and was questioned regarding Galli's theory of a double reintubation at the end of the procedure. **See** Appellee's Brief, at 35-36.

Under Rule 4003.5(c) "the direct testimony of the expert at trial may not be inconsistent with or go beyond the fair scope of his or her testimony in the discovery proceedings as set forth in the deposition, answer to an interrogatory, separate report or supplement thereto." Pa.R.C.P. 4003.5(c). "The avoidance of unfair surprise to an adversary concerning the facts and substance of an expert's proposed testimony is the primary purpose of the rule requiring that testimony be within the fair scope of the pretrial report."

_____

[4] In his appellate brief, Galli focuses largely, although not exclusively, on this Court's unpublished memorandum decision in **Yamialkowski v. Berry**, No. 2280 EDA 2015, 2017 WL 361664 (Pa. Super. filed Jan. 24, 2017) (unpublished memorandum), which although persuasive authority, is not binding on this Court. **See** Appellant's Brief, at 7-8, 18-19; Pa. R.A.P. 126(b). In **Yamialkowski** this Court held that the defendant-doctor was not required to amend his deposition testimony prior to trial, pursuant to Pa.R.C.P. 4007.4(2)(b), because his refreshed or changed recollection was not "obtained information" and thus did not fall under the ambit of Rule 4007.4. Setting aside the limited precedential value of **Yamialkowski**, in the instant case, Galli is not directly challenging Dr. Odenigbo's testimony under Rule 4007.4. The change in Dr. Odenigbo's testimony is relevant only to the extent it potentially prompted expert testimony outside of the fair scope of their reports.

*Walsh v. Kubiak*, 661 A.2d 416, 420 (Pa. Super. 1995) (*en banc*) (citation omitted).

> [I]n deciding whether an expert's trial testimony is within the fair scope of his report, the accent is on the word "fair." The question to be answered is whether, under the particular facts and circumstances of the case, the discrepancy between the expert's pre-trial report and his trial testimony is of a nature which would prevent the adversary from making a meaningful response, or which would mislead the adversary as to the nature of the appropriate response.

*Garced v. United Cerebral Palsy of Philadelphia & Vicinity*, 307 A.3d 103, 132 (Pa. Super. 2023), *appeal denied*, 327 A.3d 617 (Pa. 2024) (citation omitted). "A fully realized defense includes the presentation of an expert witness to rebut the evidence offered by the opposing party." *Schweikert v. St. Luke's Hosp.*, 886 A.2d 265, 268 (Pa. Super. 2005) (citation omitted).

In his report, Dr. Etter stated that, **prior to the end of the procedure**, Dr. Odenigbo reintubated Galli by inserting the ETT inside the already in place laryngoscope. *See* Dr. Etter's Report, at 4, 6 (unpaginated). Dr. Etter stated that such a reintubation was "very unlikely" to cause an injury to the airway because "the instrument which would have allowed the intubation was already in place[,]" and there was no evidence that Dr. Odenigbo performed a reintubation with a metal stylet. *Id.* at 6-8 (unpaginated). Further, Dr. Etter noted that post-surgery Galli had normal vital signs while in the recovery room. *Id.* at 5 (unpaginated). Notably, Dr. Etter never stated that Dr. Odenigbo performed a post-operation reintubation without a rigid laryngoscope already in place. *See id. generally*.

At trial, Dr. Etter testified that, based on Dr. Sataloff's surgeon notes and deposition, Dr. Sataloff performed the final intubation and Dr. Odenigbo extubated after surgery. **See** N.T., 7/12/23, at 188-90. Additionally, he testified that based on his review of the medical records, and Galli's vital signs post-operation, there was no reason why Dr. Odenigbo would have extubated, reintubated, and again extubated. **See id.** at 192-94.

This testimony from Dr. Etter was within the fair scope of his report. Based on Dr. Etter's report, Galli was on notice that it was Dr. Etter's opinion that Dr. Odenigbo did not perform a post-operation reintubation. Dr. Etter's testimony that it was Dr. Sataloff who performed the final intubation during the operation was based on Dr. Sataloff's prior deposition testimony and did not contradict his opinion in his report that Dr. Odenigbo reintubated Galli at some point prior to the end of the procedure. Further, Dr. Etter based his testimony that a post-operation extubation, reintubation, and extubation was medically unnecessary on Galli having normal vital signs which Dr. Etter stated in his report.

Galli was on notice of these issues such that he could make a meaningful response via his experts' testimony. Galli's theory of negligence was that "when Dr. Odenigbo reintubated Mr. Galli . . . **after Dr. Sataloff completed the papilloma surgery**, [Dr. Odenigbo] negligently perforated Mr. Galli's hypopharynx with the metal stylet he used to advance the [ETT]." Post-Trial Mot., at ¶ 2 (emphasis added). Proving his theory of negligence, that Dr. Odenigbo perforated his hypopharynx with a metal stylet, necessarily required

that Galli establish that Dr. Odenigbo performed a post-operation reintubation. Regarding whether Galli's theory of a post-operation extubation, reintubation, and extubation were medically necessary, Galli asserted in his post-trial motion that his expert witnesses testified "as to why following a surgery in the airway, a patient is reintubated." *Id.* at ¶ 92. This expert testimony was a meaningful response to Dr. Etter's testimony that such a post-operation reintubation was unnecessary in this case. Thus, Dr. Etter's testimony did not exceed the fair scope of his report.

Similarly, Dr. O'Malley's testimony did not exceed the fair scope of his expert report. Galli argues that Dr. O'Malley's testified that if Dr. Odenigbo reintubated Galli then Dr. Odenigbo acted within the standard of care, and this exceeded the fair scope of Dr. O'Malley's expert report because in his report Dr. O'Malley stated that Dr. Odenigbo only did the initial pre-operation intubation and post-operation extubation. *See* Appellant's Brief, at 34-35.

Dr. O'Malley's testimony did not exceed the fair scope of his expert report. When briefly asked by defense counsel to assume, based on Galli's theory of the case, that Dr. Odenigbo performed a final reintubation with a metal stylet and compare the risk of that to Dr. Sataloff's procedure, Dr. O'Malley stated "even if he did do both, it's absolutely minimal risk compared to [Dr.] Sataloff." N.T., 7/13/23, at 140-41. We reiterate the same reasoning used to assess Dr. Etter's testimony. That is, any testimony from Dr. O'Malley regarding Dr. Odenigbo performing a post-operation reintubation, and his standard of care in doing so, did not violate Rule 4003.5(c) because Galli

would have been adequately prepared to respond since Galli necessarily had to prove that Dr. Odenigbo performed a post-operation reintubation. Further, based on Dr. O'Malley's report, Galli was aware that Dr. O'Malley held the view that there were other likely causes of the injury. Thus, Dr. O'Malley's testimony did not exceed the fair scope of his report.

Therefore, Galli's argument that Dr. Etter and Dr. O'Malley's testimony exceeded the fair scope of their expert reports in violation of Rule 4003.5(c) is without merit.

In his second issue, Galli claims that Dr. O'Malley should not have been permitted to testify regarding the standard of care applicable to anesthesiologists for intubations because he was unqualified and the testimony was cumulative. *See* Appellant's Brief, at 30-33, 35-36.

The trial court explained why Dr. O'Malley was qualified to offer such testimony.

> [Galli's] arguments are misplaced for two reasons. One reason is that an expert is permitted to testify about a physician's standard of care under the MCARE Act if the expert: 1) is substantially familiar with the applicable standard of care for the specific care at issue as of the time of the alleged breach of the standard of care, 2) practices in the same subspecialty as the defendant physician or in a subspecialty with a substantially similar standard of care for the specific care at issue, and 3) is board certified by the same or a similar approved board, unless the court determines that the expert possesses sufficient training, experience and knowledge to provide the testimony as a result of active involvement in or full-time teaching of medicine in the applicable subspecialty or a related field of medicine within the previous five-year time period. 40 P.S. § 1303.512.

[Galli] argues that Dr. O'Malley could not testify about [Dr. Odenigbo's] standard of care because he is not an anesthesiologist. However, the requirements for a standard of care expert under the MCARE act relate to the "specific care at issue." The law is clear that the MCARE Act does not require that an expert share a subspecialty or board certification with a defendant physician in order to testify about the standard of care when they are familiar with the standard of care for the specific care at issue. **See Vicari v. Spiegel**, 989 A.2d 1277 (Pa. 2010) (Oncologist qualified to testify as to standard of care against otolaryngologist where care involved the removal of a tumor from the decedent's tongue); **Renna v. Schadt**, 64 A.3d 658 (Pa. Super. 2013) (pathologist and oncologist were both qualified to testify about the standard of care against surgeon relating to his biopsy method); **Frey v. Potorski**, 145 A.3d 1171 (Pa. Super. 2016) (hematologist was qualified to render standard of care opinion against cardiologist relating to administration of anticoagulant drugs). In **Vicari**, the Pennsylvania Supreme Court explicitly held that the "relatedness" of one field of medicine to another for purposes of the specialty and board certification exception in subsection 512(e) can only be assessed with regard to the specific care at issue. **Vicari**, 898 A.2d at 1284 ("Two fields of medicine may be 'related' with respect to certain specific issues of care, but unrelated with respect to other specific issues of care.").

In our case, Dr. O'Malley testified that he specialized and was board certified in otolaryngology (i.e., ear, nose, and throat medicine), that he was the chairman of the Department of Otorhinolaryngology at the University of Pennsylvania for over 17 years, and that he continues to see patients on a regular basis as part of his clinical practice. Dr. O'Malley further testified that he is an expert in the airway and that otolaryngologists are most needed for intubations and extubations. Dr. O'Malley confirmed that he had both intubated and extubated "hundreds" of patients.[]

Overall, the [c]ourt found that Dr. O'Malley was substantially familiar with the applicable standard of care for the specific care at issue (intubations and extubations). Moreover, while he does not practice in the same subspecialty as [Dr. Odenigbo], the [c]ourt found that otolaryngology has a substantially similar standard of care for intubations and extubations. Finally, while not board certified in anesthesiology,

the [c]ourt found that Dr. O'Malley possessed sufficient training, experience, and knowledge to provide testimony relating to the standard of care for intubations and extubations. Therefore, the [c]ourt properly admitted Dr. O'Malley's standard of care testimony.

Trial Court Opinion, 6/10/24, at 17-18 (footnotes, emphasis omitted). We agree with the trial court's well-reasoned explanation.

Therefore, for the reasons stated by the trial court, we conclude the trial court did not abuse its discretion in finding that Dr. O'Malley was qualified to testify about the standard of care applicable to anesthesiologists for intubations.

Regarding the cumulative nature of Dr. O'Malley's standard of care testimony, Galli argues it was cumulative because Dr. Etter also testified for the defense regarding the standard of care applicable to anesthesiologists for intubations. **See** Appellant's Brief, at 35-36. Galli's only argument about prejudice is premised on Dr. O'Malley not being qualified to offer such testimony. **See id.** at 35. However, this argument fails because, as explained above, the trial court did not abuse its discretion in finding that Dr. O'Malley was qualified to testify about the standard of care applicable to anesthesiologists for intubations.

We also conclude the trial court did not abuse its discretion in admitting the standard of care testimony.

Under Pennsylvania Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of . . . needlessly presenting cumulative evidence." Pa.R.E. 403; **see also** Pa.R.C.P.

223(1). Such a ruling is within the sound discretion of the trial court. **See**

**Nazarak**, 216 A.3d at 1100.

Accordingly, the trial court did not abuse its discretion in allowing Dr. O'Malley to testify regarding the standard of care applicable to anesthesiologists for intubations.

In his third issue, Galli claims that the trial court erred by giving jury instructions for both res ipsa loquitur and mere occurrence. The trial court gave the following instruction for res ipsa loquitur:

> Now, as I mentioned to you earlier, you should consider both direct evidence and circumstantial evidence. You may find that the defendant negligent if the plaintiff has proven the following: One, that this kind of harm or injury ordinarily does not occur unless someone has been negligent. Two, the conduct of persons other than the defendant, including the conduct of the plaintiff and third persons, did not cause the harm or injury. And three, the defendant share control of the situation or instrumentality when the harm or injury occurred. You may consider the general knowledge of the community and all evidence presented.

N.T., 7/14/23, at 126.

Immediately after that the trial court gave the following instruction:

> Now, the mere occurrence of an injury or unfortunate result does not prove negligence nor establish liability. The mere fact that the plaintiff experienced harm or an unfortunate result, does not establish negligence on the part of the defendant. Negligence should not be presumed from the occurrence of an unfortunate result

**Id.** at 127.

At the outset, we find that Galli has waived this issue. Galli asserts that he objected to the "mere occurrence" charge during the off-the-record charge conference and his objection can be inferred from the trial court's discussion of the proposed charges. *See* Appellant's Brief, at 36; Reply Brief, at 25-26. That is insufficient.

Galli had numerous opportunities to place his off-the-record objection on the record and failed to do so. Further, after discussing the proposed charges with counsel, the trial court asked if the parties were "satisfied" with the charges and Galli's counsel answered in the affirmative. *See* N.T., 7/14/23, at 100-01. Additionally, Galli did not object during or after the instructions were given. This resulted in waiver. *See Jones v. Ott*, 191 A.3d 782, 791-92 (Pa. 2018) (plurality) (holding that counsel informing the trial court after charging the jury that counsel had no issues with the charges given resulted in waiver of jury-charge challenge); *see also id.* at 793 (Saylor, J., concurring).

Even if it were not waived, the trial court did not err in giving both res ipsa loquitur and "mere occurrence" jury instructions. In support of his argument that these jury instructions are contradictory, Galli relies on *Pringle v. Rappaport*, 980 A.2d 159 (Pa. Super. 2009) (*en banc*). *See* Appellant's Brief, at 37-38. In *Pringle*, the defendant conceded that the plaintiffs had

established the three elements of res ipsa loquitur.[5] ***Pringle***, 980 A.2d at 176. The trial court proceeded to instruct the jury on res ipsa loquitur and gave the following instruction: "And folks, as a general proposition, that applies in any case, doctors, or physicians, do not guarantee a cure to their patients, and negligence should not be presumed from the occurrence of an unfortunate result." ***Id.*** (citation and emphasis omitted).

On appeal, this Court held that the two instructions were clearly contradictory and warranted a new trial. ***Id.*** However, Galli's reliance on ***Pringle*** is misplaced as the operative fact there was that the defendant conceded that the plaintiffs established the elements of res ipsa loquitur. ***See id.*** In other words, in ***Pringle***, because it was undisputed that the plaintiffs established the elements of res ipsa loquitur, providing the "mere occurrence" charge only served to confuse the jury rather than clarify the law. ***Pringle*** did not establish a per se rule, and we are unaware of any case, and Galli fails to cite one, where ***Pringle*** has been applied as broadly as Galli suggests.

_____

[5] The primary issue in ***Pringle*** was whether the trial court erred in giving "error of judgment" instructions to the jury. ***Pringle***, 980 A.2d at 165. This Court held that the trial court erred as a matter of law by giving the "error of judgment" jury charge and the appellants were entitled to a new trial on those grounds. ***See id.*** at 175. The Court further addressed the second issue regarding the charges of res ipsa loquitur and "mere occurrence." It briefly explained that the trial court erred in giving the res ipsa loquitur and "mere occurrence" charges and this error was a separate basis for a new trial. ***See id.*** at 176.

Here, the cause of the injury was disputed. The trial court explained why, under the facts of this case, the two jury charges were appropriate and not contradictory.

> These instructions were not contradictory or confusing. The res ipsa charge clearly stated that the jury **may** find [Dr. Odenigbo] negligent **if** [Galli] proved the requisite elements. Once again, [Galli's] argument presumes that the jury was bound to find that his injury would not have occurred without negligence. However, since there was testimony that [Galli's] injury could have been caused by a pre-existing defect, fistula, or tumor, the jury was not bound to assume negligence. Therefore, this instruction did not mislead or confuse the jury, and accurately conveyed the applicable law when one considers the circumstances of this case.

Trial Court Opinion, 6/10/24, at 12 (emphasis in original).

For the reasons stated above, we agree and conclude that the trial court did not err in providing charges of res ipsa loquitur and "mere occurrence" to the jury.

In his final issue, Galli challenges the trial court allowing Dr. Etter to testify out of order before Galli was finished presenting his case. The trial court is to "exercise reasonable control over the mode and order of examining witnesses[.]" Pa.R.E. 611(a). Such decisions are within the trial court's discretion. For the reasons stated by the trial court, we discern no abuse of discretion in the trial court allowing Dr. Etter to testify before the conclusion of Galli's case. *See* Trial Court Opinion, 6/10/24, at 14-16.

Therefore, Galli's issues are without merit, and we affirm.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 9/10/2025